## BUCYRUS COMPANY ET AL. *v.* REISINGER.

[No. 11,142. Filed January 12, 1922.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Notice of Injury.—Employer's Failure to Furnish Medical Aid.*—Where an employer, having knowledge of an accident and injury and knowing that the injured employe needed further medical treatment, failed to make any active effort to see that he received the necessary medical care required by §25 of the Workmen's Compensation Act (Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918), as amended by Acts 1919 p. 158, the requirements of which imply more than a passive willingness on the part of the employer to respond to a request or demand by an employe for medical aid, the employer cannot complain that he was not notified when the employe's condition became more serious by reason of general septicaemia. p. 365.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—General Permanent Impairment from Single Injury.—Measure*

*of Compensation.*—Where an employe received a single injury which resulted in general septicaemia, which produced a permanent general impairment of his entire body and the permanent loss of thirty-five per cent. of the use of the left arm, fifteen per cent. of the use of the right arm, and fifteen per cent. of the use of each leg, an award of 190 weeks' compensation under §31, cl. h, of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), as amended by Acts 1919 p. 158, will not be disturbed on appeal. p. 366.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by John Reisinger against the Bucyrus Company and others. From an award for applicant, the defendant appeals. *Affirmed.*

*Frederick K. Warne* and *Joseph W. Hutchinson,* for appellants.

*W. M. Wheeler,* for appellee.

McMAHAN, J.—The Industrial Board awarded appellee 190 weeks' compensation beginning February 8, 1920. Appellant appeals from this award and contends that it is contrary to law and not sustained by sufficient evidence.

The board found that on December 19, 1919, appellee was in the employ of appellant at an average weekly wage of $24; that on said date he received a personal injury by an accident arising out of and in the course of his employment of which appellant at the time had actual knowledge; that said injury resulted in general septicaemia as a result of which appellee was confined to his bed for several weeks beginning February 8, 1920, and was wholly unable to work from that time to May 17, 1920; that such septicaemia produced a general permanent impairment of appellee's entire body and resulted in the permanent loss of thirty-five per cent. of the use of his left arm, fifteen per cent. of the use of his right arm, fifteen per cent. of the use of each leg.

The facts as disclosed by the evidence are as follows: December 19, 1919, appellee was and for a period of about seven years immediately prior thereto had been in the employ of appellant. While at work on said day he sustained an injury by getting a splinter of steel in one of his fingers. Appellant had knowledge of this accident and injury at the time and furnished appellee with first aid after which appellee went back to work. The injury was dressed again by appellant the next morning which was Saturday. Appellee returned to work Monday morning. His finger at that time was badly discolored and getting worse. He showed it to a representative of appellant who sent him to the first aid department for further treatment and from there he was sent to a physician, who treated it with iodine and directed the application of poultices and sugar of zinc, telling appellee it would be all right. Appellee did not work for three days when he began working for another employer at a place much nearer his home. When he quit working for appellant he intended to go to Missouri. But there is no evidence that appellant had any knowledge that appellee had quit working for it or that he had any intention of going to Missouri. In the course of a few days his hand began to itch, and would be swollen in the morning but after he would work awhile the swelling would go down to some extent, but his finger was always discolored, sore and itched. About January 1, 1920, appellee went to a physician of his own selection, Dr. Lavelle, who continued to treat him until February 8, 1920, when he became worse on account of blood poisoning and had to go to bed. He was not able to go back to work for about three months. Abscesses developed on both hands, arms, legs, ankles, and feet, so that in the course of treatment the attending physician lanced him in twenty-two different places. His sores had to be dressed every day

and required the attention of both doctor and nurse. His condition was such that the attending physician says he didn't "see how he ever got well." He did not return to appellant's physician for further treatment. In testifying upon this subject, appellee said: "I was not told to return. He (the physician) said I could come back if I wanted to. He said it would be all right in a day or two. He did not say he expected me to return if it was not all right. He said I could come if I wanted to. There was a slight swelling in my left hand all along but I thought it might be from the lancing. I didn't pay much attention to it at the time until it started itching. I thought maybe it would go away. The swelling continued for about three weeks, when I got sick and on February 8, 1920, had to go to bed. We called Dr. Megenheimer." Dr. Patterson, the physician to whom appellant sent appellee for treatment, testified relative to having treated appellee; that appellee should have had further treatment, and that he instructed him to return for further treatment, but that he did not do so. The evidence also shows the extent and character of appellee's impairment as found by the board.

Appellant complains of the failure of appellee to return to its doctor for further treatment, and insists that there is no evidence appellant knew, or that it had any notice of the serious injury to appellee which manifested itself February 8, 1920, and that a notice of injury in this case, in order to be effectual, must be a notice of the injury of February 8, 1920, when the serious result of the accident manifested itself and when appellee was compelled to go to bed; that its notice and knowledge of the original injury was not sufficient. Appellant conceding that it had notice of the accident and injury December 19, 1919, contends that since appellee did not return to its physician for further treatment it had the

right to assume that he had recovered and that it was entitled to further notice when his condition became so serious that he had to quit work and go to bed.

Section 8020i1 Burns' Supp. 1921, Acts 1919 p. 158, provides that: "During the first thirty days after an injury the employer shall furnish or cause to be furnished, free of charge to the injured employe, an attending physician, for the treatment of his injuries, and in addition thereto such surgical, hospital, and nurse's services and supplies as the attending physician or the Industrial Board may deem necessary."

The requirement of this statute implies something more than passive willingness on the part of an employer to respond to a demand or request for 1. medical aid. It implies some degree of active effort to bring to the injured employe the required humanitarian relief. A person injured by an accident is presumed to be under more or less physical disability and not in a normal condition so as to be able to look out for himself and his needs. This being true, it becomes the duty of an employer having knowledge that one of his employes has been injured by an accident arising out of and in the course of his employment to be more than passive in his efforts to furnish the medical aid prescribed and required by the statute. The statute requiring the employer to furnish medical services is mandatory in form. Having had knowledge of the accident and injury, and knowing that appellee needed further treatment, and having failed to make any effort to see that he got the necessary medical care, appellant is in no position to complain of the fact that it was not notified when appellee's condition became serious as the result of the accident and injury of which it had actual knowledge. The employer here had notice of the injury. The doctor to whom it sent appellee for treat-

ment knew and testified that further treatment was necessary. It therefore had an opportunity to take the proper steps to furnish medical aid to the injured employe, and with such knowledge as is disclosed by the evidence in this case, having failed to follow up appellee's injury, it is in no position to complain of the failure to give it notice that the injury was growing .worse. Appellant knew that appellee's injury did not respond to first aid treatment. It sent him to a physician for treatment and knew that he needed further treatment. It knew he quit work, and having failed to do more than show a passive willingness to comply with the mandatory requirement of the statute to furnish medical aid, appellant cannot be heard to complain that it had no notice of the serious effect of the injury which nearly resulted in his death and which made him a cripple for life.    If appellant was prejudiced because of its failure to have notice of appellee's serious illness which the board found resulted from the accident and injury to appellee, the fault can be traced to its failure to follow up and treat an injury that it knew needed further treatment.

Appellant also contends that upon the facts as found by the board, appellee in no event would be entitled to compensation for a period of more than 185 weeks. Appellant has been content to cite "Acts 1919 pages 162-163" in support of this contention. · We assume that by this citation appellant refers to §31 of the Workmen's Compensation Law.    Our attention, however, has not been called to any specific provision of that section or of any other section of the statute which specifically fixes the period of compensation in the instant case.    Appellant has made no attempt to show why appellee's compensation should be limited to 185 weeks.    Clause "a" of §31, Acts 1919 p. 158, *supra,* among other things provides for 250 weeks

compensation for the loss of an arm and 200 weeks for the loss of a leg. Clause "b" of §31, *supra,* provides that for a total permanent loss of the use of an arm, hand, finger, leg, etc., compensation for such loss shall be the same as for loss by separation. Clause "c" of §31, *supra,* relates to the permanent *partial* loss of the use of a single member as distinguished from clause "b" of §31, *supra,* which relates to the *total* permanent loss of such use. Clause "d" of §31, *supra,* relates to total permanent disability while clause "e" of §31, *supra,* relates to the loss of both hands, or both feet, or the sight of both eyes or of any two such losses and provides that compensation in such cases shall be paid for 500 weeks. Clause "f" of §31, *supra,* relates to the permanent loss of the sight of "an eye," while clause "g" of §31, *supra,* relates to complete loss of hearing.

All other cases of permanent partial impairment are provided for in clause "h" of §31, *supra,* which reads as follows: "In all other cases of permanent partial impairment, compensation proportionate to the degree of such permanent partial impairment, in the discretion of the industrial board, not exceeding five hundred weeks."

Appellee received a single injury which resulted in general septicaemia and which produced a permanent general impairment of his entire body and the permanent loss of thirty-five per cent. of the use of the left arm, fifteen per cent. of the use of the right arm, and fifteen per cent. of the use of each leg.

Compensation for such permanent partial impairment as appellee suffered is not provided for other than in clause h of §31, *supra,* heretofore quoted. The legislature, as it had a right to do, provided that for the loss of one arm above the elbow, compensation should be awarded for a period of 250 weeks; for the loss of one leg above the knee, that compensation should be awarded for 200 weeks, and for the loss of both arms or both

legs, that compensation must be allowed for 500 weeks. Compensation allowed for the loss of one arm is greater than is allowed for the loss of one leg, but compensation for the loss of both arms and for the loss of both legs is the same.   Compensation for the loss of both legs is two and a half times the compensation allowed for the loss of one leg.   We know of no method of determining to a mathematical certainty the per cent. or degree of a partial impairment.   The extent of such an impairment depends upon the facts in each individual case, and the board in determining the extent of such impairment must of necessity use their best judgment.

What shall be said as to the method of determining the period for which compensation shall be paid in cases of permanent partial impairment under clause "h" of §31, *supra*?   Under clause "c" of §31, *supra,* compensation for a permanent partial loss of one leg shall be paid "for the proportionate loss" of the use of such leg, and if it be admitted that an employe who suffers a fifty per cent. permanent partial loss of the use of one leg should receive compensation for 100 weeks, it does not follow that if he suffers a fifty per cent. permanent partial loss of the use of both legs that the period of compensation is 200 weeks.   If we should hold that the law fixes the period for which compensation shall be paid it would be more reasonable to fix such period at 250 weeks, or at one-half of the period fixed for the loss of both legs.   We assume that appellant's contention is that appellee's compensation for each arm should be determined by obtaining thirty-five per cent. of 250 weeks for the loss of the use of one arm, fifteen per cent. of 250 weeks for the loss of the use of the other, and fifteen per cent. of 400 weeks for the loss of the use of both legs.   Upon this calculation appellee would be entitled to 185 weeks compensation as contended for by appellant.

In order to hold that the award of 190 weeks compensation to appellee is not contrary to law, it is not necessary for us to determine whether the board must arrive at the period during which compensation shall be paid by a mathematical calculation based on the percentages of his several impairments or whether such period shall be fixed at a certain number of weeks not exceeding 500 as the board in its best judgment shall deem proper. All we need do, is to hold if the board has some discretion in fixing the time during which compensation shall be paid, that such discretion was not abused, or if we should hold that for such a loss the injured employe should be allowed compensation for thirty-five per cent. of 250 weeks for the partial loss of one arm and fifteen per cent. of 250 weeks for the loss of the other and fifteen per cent. of 500 weeks for the partial loss of both legs, the total time for which compensation should be paid would be 200 weeks. But it is to be observed that either holding would require an affirmance of the award. Appellee not only suffered a partial loss of the use of his arms and legs, but he also suffered a general permanent impairment of his entire body, the degree or extent of which is not disclosed, and we are not prepared to say that the board, in determining the amount of compensation to be paid appellee, should not take into consideration the impairment of appellee's body, as well as the impairment of his arms and legs. If there was any error in fixing the number of weeks for which compensation should be paid in the instant case, it was an error in appellant's favor and one of which it cannot complain.

The award is affirmed.