RUEGAMER *v.* HAYNES STELLITE COMPANY

[No. 19,222. Filed June 20, 1960.]

696

*Theodore J. Smith,* of Lafayette, for appellant.

*James V. Donadio, Geoffrey Segar* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for appellee.

MYERS, J.—This is an appeal from an award by the Full Industrial Board of Indiana (hereinafter called the Board) wherein it determined that Joseph D. Ruegamer, appellant herein, did not sustain an accidental injury arising out of and in the course of his employment with appellee, and denied appellant's claim for compensation.

These proceedings were initiated by appellant filing an Application of Injured Employe to the Industrial Board for the Adjustment of Claim for Compensation, which Application is known as Form No. 9. In it he alleged that he had received personal injuries as the result of an accident arising out of and in the course of his employment with appellee on April 28, 1956.

The hearing took place before a Single Hearing Member of the Board in Kokomo on October 22, 1957. Evidence taken from the record reveals that appellant was a man 53 years of age and had worked for the appellee since July 24, 1952. He was making an average weekly wage in excess of $55 per week. His job was the operation of a sandblast machine. On April 28, 1956, his machine broke down and he was transferred to a cleaning table or scabbing bench. This job involved the cleaning or scabbing of burrs off freshly-cast gears. These gears had been previously deposited in a large metal pan. It was customary for two men to lift the pan and place it upon the table so that the gears would be available for cleaning. The pan full of gears weighed from 200 to 300 pounds. The gears themselves weighed from one-fourth to one-half pound each.

Appellant testified that after he had been transferred to the scabbing bench on April 28, 1956, he and a fellow-worker, Frank Gordon, lifted a full pan of gears weighing about 300 pounds from the floor and set it on the table. As they did so, he said that "something snapped" and it felt like "a million needles going through my body." From then on he did not know what happened. He said he "blacked out." Five lay witnesses who were fellow-workers described the incident, including Frank Gordon. They said that he was working at the bench when he started shaking, became rigid, his eyes rolled back, he got cold and frothed at the mouth. He was taken to the dispensary on a stretcher where a nurse said his color was ashen, pale and blue; that his facial muscles were twitching, as were his hands and arms. She testified that she inserted a tongue plate in his mouth to prevent him from swallowing his tongue.

Appellant testified that he remembered nothing after lifting the pan. He stated that he had one previous "blackout" on February 8, 1956, while pouring gravity metal in the foundry. He had lifted a heavy pouring pot containing molten metal about chin-high when he "blacked out." He was taken to First Aid then and later drove his car home. A day or so afterward he returned to work.

Following the April 28, 1956, incident he did not return to work. The back of his neck, right arm, and down into his right leg were "practically paralyzed." He claimed to have constant headaches and loss of shoulder motion with progressive pain. There was demonstrable weakness of his right hand and he was unable to lift it to feed himself properly. He was placed under the care of specialists and spent several weeks in a hospital in Kokomo for observation pur-

poses, and later in a hospital in Cincinnati. At the time of the hearing a doctor declared he was 40 per cent. impaired as a whole.

Three physicians testified on behalf of appellant, being Dr. E. T. Stahl, an orthopedic specialist, Dr. Earl Applegate, and Dr. Frank H. Mayfield, a specialist in neurological surgery of Cincinnati. They were all of the opinion that appellant's disability was primarily a conversion hysteria. Dr. Mayfield defined the term as a "psychogenic or functional illness" or words "usually used to describe an illness in which a psycho fear or anxiety is converted into a somatic or organic disability." He further stated that in the process which led up to the fainting spell, or that followed the fainting spell, appellant had sustained a neck strain which was painful. Upon this was superimposed an anxiety or state of fear of impending death or disability that led to a conversion hysteria which disabled him.

Two physicians testified on behalf of appellee. They were Dr. John Robert Van Kirk, appellant's family doctor, and Dr. John Heatherington, a neuro-psychiatrist of Indianapolis. They agreed that appellant experienced an epileptic or convulsive seizure on the date of the accident. Dr. Van Kirk had examined him at his home afterward, because he had gotten sick at work, "as he had said, he had a spell." On examination he noticed that appellant had chewed his tongue. This doctor had been attending appellant since 1950, and testified that appellant had had similar episodes dating back to August, 1951. In fact, Dr. Van Kirk stated at the hearing that appellant had seizures in his office on April 30, 1956. In the doctor's opinion, there was no relationship between lifting the pan of castings and having a convulsion—it was only a "coincidence."

On the basis of this hearing, and the evidence pre-

sented therein, the Hearing Member found in favor of appellee and against appellant, deciding that appellant did not sustain an accidental injury in the course of his employment.

The Full Board reviewed the evidence and heard arguments of counsel. It sustained the Hearing Member's decision and entered a final award accordingly.

Appellant's assignment of error is that the award is contrary to law.

In Points One to Four of Argument in his brief, appellant states that the award must be sustained by substantial evidence, and that appellee's evidence fails to meet this rule; that the appellant sustained an accidental injury, being a strain, arising out of the course of his employment, which resulted in a nervous condition or a conversion hysteria; that such is a valid basis for allowing workmen's compensation benefits; that there is no competent evidence to support the Board's finding that any affliction appellant may have had was due to causes unrelated to his employment.

These Points of Argument appear to pertain to the sufficiency of the evidence. It has been held that an assignment of error that the award is contrary to the evidence presents no question where the judgment is negative. As Judge Crumpacker said:

". . . the case is now before us upon an assignment of errors which, in purport, charges (1) that the award is contrary to law, and (2) that the award is contrary to the evidence. The latter assignment presents no question as it has long been settled law in this state that where a judgement is negative an examination into the sufficiency of the evidence to sustain the finding upon which such judgment rests can avail the appellant nothing. . . .

"The major question presented by the first assignment is whether the evidence in support of the appellant's claim is so conclusive in character that a finding against him could have been arrived at only through exercise of improper considerations. Our decision on this question rests upon the application of one or the other of two principles of law which have become ingrained in our jurisprudence. If the substantial evidence in this case is conflicting it was within the exclusive province of the Industrial Board to determine with whom the truth lay and its finding in that respect cannot be disturbed. On the other hand if such evidence is wholly in favor of the appellant and is undisputed and complete in all essentials necessary to recovery, the Industrial Board had no right to disregard it through prejudice or mere caprice and, under such circumstances, its award will be set aside." *Bell* v. *Goody, Goody Products Co.* (1945), 116 Ind. App. 181, 183, 184, 63 N. E. 2d 147, 148.

From the evidence recited above, it is evident that there was a conflict. It certainly was not wholly in favor of the appellant and so undisputed and complete that the Industrial Board disregarded it because of prejudice or caprice. We must therefore sustain the finding and award of the Board that appellant's "blackout" was due to causes totally unrelated to his employment with appellee.

Point Five of Argument in appellant's brief alleges error in overruling a pleading entitled "Verified Renewal of Objections; Application to Submit Additional Evidence Before Full Board and Motion to Vacate Award and Remand Cause to an Impartial Hearing Member."

The motion stated that during the progress of the hearing in Kokomo on October 22, 1957, testimony was introduced which revealed that on February 8, 1956, appellant had "blacked out" while straining to lift a

pouring pot containing molten metal, and that Dr. Stahl, in part, attributed appellant's disability to the injury resulting from such strain; that this incident was not alleged in appellant's claim; that during the noon recess the Hearing Member, out of the presence of appellee's counsel, and in appellant's view, advised counsel for appellant to amend his claim so as to allege the incident; that this amendment was allowed to be made over violent objections by appellee's counsel; that appellant was led to believe that the amendment was allowed to be made in support of an award for appellant, but that later this allegation led the Hearing Member to hold against appellant; that the Hearing Member would not permit appellant to explain the work operation involved in pouring hot metal, ruling that such evidence was not material; that the Hearing Member rejected an offer to prove partial paralysis of appellant's right arm, by refusing to have him raise his right arm at the hearing.

The motion proceeded to allege that the comments of the Hearing Member were such that they indicated he was going to be arbitrary, so that appellant refrained from making objections to admission of testimony which should have been excluded at the time of the hearing. He therein listed six different excerpts from different witnesses which he claimed should not have been admitted in evidence. Appellant asked that additional testimony be heard by the Full Board; that the objections to the testimony set forth in the motion be sustained; that the award be set aside and assigned to another Hearing Member; and that the Board appoint an unbiased physician to aid in the determination of the cause.

It is to be noted that this motion was filed before the Full Board on July 2, 1958, immediately prior to

the hearing, which was set for that date. On July 3, 1958, the Board overruled the objections and denied the motion.

Appellant claims that this action by the Full Board was an abuse of discretion in that it denied appellant an opportunity to be heard on matters alleged in his claim, and that the Hearing Member was guilty of irregularities and misconduct which were prejudicial to appellant.

As to the objections claimed to have been "renewed" in appellant's motion, we find that the record does not show they were made before the Hearing Member at any time during the hearing in Kokomo. These were not renewals of objections therefore, but were objections being made for the first time before the Full Board. In "Workmen's Compensation Law of Indiana" (The Bobbs-Merrill Company, Inc., 1950), by Ben F. Small, the following statement is made:

> "Consistent with general procedures, one who does not take advantage of his proof opportunities at all levels is likely to find that he has waived them. He should make the most of his single member hearing, for example, or he may not be allowed to do better before the full Board." §12.6, 1958 Supp., p. 89.

There is no requirement by law that upon a review of evidence by the Full Board it must hear new or additional evidence. Section 40-1511, Burns' 1952 Repl., states that on review of an award made by less than all members of the Board, it "shall review the evidence, or, *if deemed advisable,* hear the parties at issue, their representatives and witnesses. . . ." (Our emphasis.) Rule 18 of the Rules of Procedure before the Industrial Board states that facts upon review by the Full Board will be determined upon

evidence introduced in the original hearing without hearing new or additional evidence *at the discretion of the Board.* The rule permits the introduction of new evidence, but such is entirely discretionary with the Board and, unless abused, that discretion is not subject to review. *Wilson* v. *Betz Corp. et al.* (1958), 128 Ind. App. 189, 146 N. E. 2d 570; *Brooks* v. *International Furniture Co.* (1952), 122 Ind. App. 300, 101 N. E. 2d 197, 103 N. E. 2d 220.

The objections set forth in the motion referred to certain hearsay evidence, answers on cross-examination, answers to hypothetical questions wherein it is claimed that the questions assumed matters not in evidence, the admission of a deposition in evidence when the deponent was present at the hearing, and certain testimony claimed to be incompetent, irrelevant and immaterial. None of the testimony admitted without objection affected the fundamental rights of the appellant. We assume the Full Board had the record of the original hearing before it and overruled these objections after being duly advised. There is grave doubt in our mind as to whether the Full Board was under any obligation to consider them at all.

The additional evidence which appellant wished to introduce referred to an alleged misconduct on the part of the Hearing Member in allegedly advising counsel for appellant to amend his claim so as to set forth the February 8th incident, only to say later that this incident led the Hearing Member to hold against appellant. It was alleged that the attitude of the Hearing Member became arbitrary and "un-judicial." Because of the argument incident to admitting the amendment, appellant stated that he refrained from making objections to the admission of testimony because he did not want to become involved in violent arguments.

Neither the alleged conversation with appellant's counsel, the alleged violent argument, nor the alleged reason given by the Hearing Member for finding against appellant appear in the record. Whether they took place or not does not seem material to us. In any event they would not affect the result reached in this case on the merits. If any error was committed by the Hearing Member in allowing the claim to be amended, it was in overruling the appellee's objections to the amendment. This action was favorable to appellant.

"The rule is well settled that a party on appeal to this court cannot assign error upon nor complain of a ruling of the lower court as erroneous which is in his favor." *Kime* v. *Vetter* (1909), 172 Ind. 317, 319, 88 N. E. 497, 498.

As to being misled by the Hearing Member when appellant's counsel allegedly was "advised" to file the amendment, this was a matter wholly within the discretion of counsel in presenting his case. By his own admission in the motion, appellant stated that he was led to believe that the amendment was desired to be made in order to support an award for himself. An attorney is not obliged to follow the suggestions of a Hearing Member of the Industrial Board or a judge of a trial court in the preparation and presentation of his cause. If such "advice" is tendered and counsel accepts it relying on a favorable decision, he does so at his peril. Appellant did not allege that he was promised an award if he amended his claim, which would have been highly improper and most irregular. The statement was that appellant was "led to believe" that the Hearing Member "desired that the allegation be made to support an award for claimant." This was pure supposition and speculation on the part of appellant and

his counsel. It can in no way be considered as misconduct on the part of the Hearing Member. As was said by Judge Royse:

> "One cannot gamble on the outcome of a case in this manner and then complain of the action of the trier of facts to hear such evidence." *Poke* v. *Peerless Foundry Co.* (1957), 127 Ind. App. 348, 352, 141 N. E. 2d 133, 135.

Point Six of Argument in appellant's brief is to the effect that by assigning as error that the award is contrary to law, such assignment is sufficient to present both the sufficiency of the facts found to sustain the award and the sufficiency of the evidence to sustain the finding of facts. This is statutory. Section 40-1512, Burns' 1952 Repl. This is merely an explanation of what is meant by an assignment of error that the award is contrary to law, and presents no argument for us to consider.

Award affirmed.

Ax, P. J., and Cooper and Ryan, JJ., concur.

NOTE.—Reported in 167 N. E. 2d 725.