BETHLEHEM STEEL CORPORATION *v*. GEORGE DIPOLITO.

[No. 2-775A195. Filed March 15, 1976.]

418

*Larry G. Evans, Karen L. Hughes, Clifford, Hoeppner, Houran, Wagner & Evans,* of Valparaiso, for appellant.

*Donald W. Rice, Rice & Rice,* of Valparaiso, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Review is sought of an affirmative Award by the Full Industrial Board of Indiana (the Board) compensating Plaintiff-Appellee, George Dipolito (Dipolito), for injuries received by him while working at a portable burner for Defendant-Appellant, Bethlehem Steel Corporation (the Employer), the Employer claiming the Award is contrary to law because based upon Dipolito's loss of three toes and not upon the permanent partial impairment of his foot as a whole.

We affirm.

## FACTS

The facts and evidence most favorable to Dipolito and the Board are as follows:

On May 25, 1973, Dipolito sustained injuries to his right foot which resulted in amputation of the great toe, the second toe, the third toe of his right foot, and amputation of the head of the first metatarsal of his right foot. Dr. Louis Kimmel, the Employer's plant surgeon, performed the necessary surgi-

cal procedures and attended Dipolito through post-operative care.

On January 29, 1974 a hearing was held before the Single Hearing Member to determine the nature of Dipolito's injury and the amount of compensation to which he was entitled. Following an adverse ruling, the Employer petitioned the Board for review. The Board made its findings and Award granting compensation on July 7, 1975:

## AWARD OF THE FULL INDUSTRIAL BOARD

BE IT REMEMBERED, that pursuant to notice fixing the time and place therefore, the above captioned cause was called for hearing and review before the Full Industrial Board of Indiana, in the hearing room of said Board, 601 Indiana State Office Building, 100 N. Senate Avenue, Indianapolis, Marion County, Indiana, on the 1st day of July, 1975, at 1:00 P.M., on defendant's Form No. 16 filed with the Industrial Board of Indiana on March 27, 1974.

Plaintiff was represented by Donald W. Rice; defendant was represented by Larry G. Evans.

## STIPULATION

At the hearing it was stipulated and agreed by and between the parties that on the 25th day of May, 1973, plaintiff was in the employ of the defendant at an average weekly wage in excess of $100.00, with no dependents; that on said date he received personal injuries by reason of an accident arising out of and in the course of his employment with the defendant in Porter County, Indiana, when he was working at a portable burner and he was injured by a piece of scrop (sic) which fell and hit his right foot; that defendant has furnished all statutory medical attention and supplies, which were incurred as a result of the accident; that the plaintiff was temporarily totally disabled for a period of 11 weeks and that the defendant paid temporary total disability at the rate of $60.00 per week for the 11 weeks period; that the specific nature of the injury to the plaintiff was in the nature of an amputation of the entire great toe, as well as the head of the first metatarsal (this is all on the right foot), and furthermore, that the plaintiff's second right toe was amputated at the metatarsal-phalangeal joint and that the third right toe

was amputated through the proximal third of the proximal phalanx.

## ISSUE

The sole issue to be determined by the Board is whether plaintiff is to be compensated as a result of the specific amputations for his three toes, or, whether he is to be compensated on the basis of a permanent partial impairment to his leg below the knee.

## EVIDENCE

The evidence in this case consisted of the testimony of George Dipolito, the plaintiff, who related to the Board his injury and the loss of the first three toes on his right foot. He related that the loss of these toes had not affected his use of the foot to any appreciable degree "except for dancing".

Dr. L. E. Kimmel testified on behalf of the defendant. He related the amputations of plaintiff's toes and, over objection by the plaintiff, testified that in his opinion plaintiff's entire right foot was permanently partially impaired to the extent of 40% inasmuch as the metatarsal bone of the big toe was likewise amputated. Dr. Kimmel testified that the injury thus had an effect on the foot as a whole and not on just the individual toes.

## FINDINGS

Said Full Industrial Board of Indiana having heard the arguments of counsel and having reviewed all the evidence in said cause and being duly advised in the premises therein, now finds that the Board adopts the findings contained in the stipulation of the parties.

It is further found that plaintiff's injuries have reached a permanent and quiescent stage and that plaintiff sustained amputation of the head of the first metatarsal which includes the entire great toe; that the second toe has been amputated through the metatarsal-phalangeal joint of the proximal phalanx, *which injuries represently (sic) primarily the loss by amputation of the great toe, second toe and third toe of the right foot.*

That prior to the filing of plaintiff's application a good faith effort was made by said parties to adjust said claim, which effort resulted in a disagreement between the parties.

Said Full Industrial Board of Indiana now finds for the plaintiff and against defendant on plaintiff's Form 9 application filed November 2, 1973.

### AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that there be awarded plaintiff as against defendant *compensation at the rate of $60.00 per week for a specific period of 110 weeks beginning May 25, 1973, as a result of the amputation of the great toe, second toe and third toe of plaintiff's right foot.*

\* \* \*

(Emphasis added.)

The Employer appeals.

### ISSUE

Is the Board's Award of compensation contrary to law because based upon Dipolito's loss of three toes and not upon the permanent partial impairment of his foot as a whole?

The Employer contends the only question before the Board was the extent, if any, of permanent partial impairment resulting from the accident. It argues that Indiana law requires the amount of compensation in such cases to be based upon a percentage of the total permanent impairment under § 31(b) produced by the several injuries considered collectively rather than by adding together the fractional parts of the injury involved, thereby resulting in 70 weeks of benefits, i.e., 40% of loss of the foot as a whole (175 weeks) as opposed to 110 weeks awarded by the Board as a result of 60 weeks for the big toe, 30 weeks for the second toe, and 70 weeks for the third toe. The Board was therefore bound by law to base its Award upon the percentage of impairment to the foot below the knee as outlined in § 31(b) of the Workmen's Compensation Act.

Dipolito disagrees. He responds that simply because there was evidence of permanent partial impairment entered at the hearing, the Board was not required *a fortiori* to base its Award upon such impairment where there was other competent evidence justifying the Board's decision.

## DECISION

CONCLUSION—It is our opinion that the Board's decision is not contrary to law.

Compensation awards to workmen are governed in Indiana by the benefits stated in § 31 of the Workmen's Compensation Act. IC 1971, 22-3-3-10 (Burns Code Ed.).

§ 31 (a) in part designates specific awards for amputation of various members:

> (a) . . . *with respect to injuries in the following schedule* occurring on and after July 1, 1971, the *employee shall receive* in addition to temporary total disability benefits not exceeding twenty-six (26) weeks on account of said injuries, a weekly compensation of sixty percent (60%) of his average weekly wages not to exceed one hundred dollars ($100) average weekly wages, for the periods stated for said injuries respectively, to wit:

> (1) *Amputation:* For the loss by separation of the thumb, sixty (60) weeks, of the index finger forty (40) weeks, of the second finger thirty-five (35) weeks, of the third or ring finger thirty (30) weeks, of the fourth or little finger twenty (20) weeks, of the hand by separation below the elbow joint two hundred (200) weeks, or the arm above the elbow two hundred fifty (250) weeks, *of the big toe sixty (60) weeks, of the second toe thirty (30) weeks, of the third toe twenty (20) weeks,* of the fourth toe fifteen (15) weeks, of the fifth or little toe ten (10) weeks, of the foot below the knee joint one hundred fifty (150) weeks and of the leg above the knee joint two hundred (200) weeks: Provided, That with respect to injuries occurring on and after April 1, 1959, resulting in *loss by separation of the foot below the knee joint* or of the leg above the knee joint, the employee shall receive in addition to temporary total disability benefits not exceeding twenty-six (26) weeks on account of said injuries, a weekly compensation of sixty per cent (60%) of his average weekly wages for the following periods, to wit: of the foot below the knee joint, *one hundred seventy-five (175) weeks;* and of the leg above the knee joint two hunderd (hundred) twenty-five (225) weeks. The loss of more than one (1) phalanage of a thumb or toes shall be considered as the loss of the entire thumb or toe. The loss of more than two (2) phalanges of a finger shall be considered as the loss of the entire finger.

That the loss of not more than one (1) phalange of a thumb or toe shall be considered as the loss of one-half (½) of the thumb or toe and compensation shall be paid for one-half (½) of the period for the loss of the entire thumb or toe.

\* \* \*

(Emphasis added.)

§ 31 (b) provides in part for the total or partial loss of use of various members and for all other cases of permanent partial impairment:

(b) . . . *with respect to injuries in the following schedule* occurring on and after July 1, 1971, *the employee shall receive* in addition to temporary total disability benefits not exceeding twenty-six (26) weeks on account of said injuries, a weekly compensation of sixty per cent (60%) of his average weekly wages, not to exceed one hundred dollars ($100) average weekly wages, for the period stated for such injuries respectively, to wit:

\* \* \*

(2) Partial loss of use: *For the permanent partial loss of the use of* an arm, hand, thumb, finger, leg, *foot,* toe or phalange, *compensation shall be paid for the proportionate loss of the use of such* arm, hand, thumb, finger, leg, *foot,* toe or phalange.

\* \* \*

(6) In all other cases of permanent partial impairment, compensation proportionate to the degree of such permanent partial impairment, in the discretion of the industrial board, not exceeding five hundred (500) weeks.

(Emphasis added.)

Thus under § 31 (a), the Board awarded Dipolito a total of 110 weeks—60 weeks for his big toe, 30 weeks for his second toe, and 20 weeks for his third toe. The most a workman may be awarded by the specific terms of this section for the loss of all five toes is 135 weeks, and for loss of his foot by amputation, 175 weeks.

By the terms of § 31 (b), the Board may under proper circumstances determine benefits by applying the percentage of loss of use sustained to the affected member—a foot in this case. So computed, as Employer contends it should be, the

40% loss of use of the foot as whole (175 weeks) results in 70 weeks as the proper compensation to Dipolito.

Which subsection of § 31 does the Board follow . . . (a) or (b) ? The answer in large part lies in the Board's findings. While there may be evidence of permanent partial impairment and also that Dipolito's injuries consisted of loss of three toes, the Board *found* that his injuries represent "primarily the loss by amputation of the great toe, second toe, and third toes of the right foot".

The Board has a duty to find the nature and extent of a claimant's injury and to grant the appropriate compensation under § 31 when deserved.

See, *Trustees of Indiana University* v. *Rush* (1934),
99 Ind. App. 203, 192 N.E. 111;
*Western Construction Co.* v. *Early* (1924),
81 Ind. App. 490, 142 N.E. 396;
*Kenwood Bridge Co.* v. *Stanley* (1917),
66 Ind. App. 563, 117 N.E. 657.

In making this determination, it must weigh all the relevant evidence including any expert testimony and the claimant's own statement regarding the extent and character of his injury. *See, Kenwood Erection Co.* v. *Cowsert* (1953), 124 Ind. App. 165, 115 N.E.2d 507; *Indiana Limestone Co.* v. *Ridge* (1929), 89 Ind. App. 689, 167 N.E. 617.

Appellate review of such decisions is limited. We determine only if the evidence presented at the hearing supports the Board's Findings of Fact and if those Findings in turn support the Board's award. IC 1971, 22-3-4-8 (Burns Code Ed.). We will not disturb an award if the amount of compensation awarded was within the limits of the part of § 31 applied and the choice of that particular part of § 31 was within the bounds of the Board's discretion as controlled by the facts presented at the hearing. *See West-ern Construction Co.* v. *Early, supra,* 81 Ind. App. at 493, 142 N.E. 396.

We understand the Employer's contention that the Board may not combine schedule benefits under § 31(a)(1) in such

a way that multiple toe amputations may be added together to exceed the loss of the foot as a whole.

Available Indiana case law supports this assertion.

> *See,* *In re Maranovitch* (1917),
> 65 Ind. App. 489, 117 N.E. 530;
> *In re Cannon* (1917),
> 66 Ind. App. 1, 117 N.E. 658.

*See also,* *Superior Construction Co.* v. *Day* (1956),
> 127 Ind. App. 84, 137 N.E.2d 543;
> *Trustees of Indiana University* v. *Rush, supra;*
> *Dowdell* v. *Super-Heater Company* (1931),
> 93 Ind. App. 287, 178 N.E. 176;
> *Lauritzen* v. *United States Reduction Co.* (1922),
> 78 Ind. App. 293, 135 N.E. 390;
> *Western Construction Co.* v. *Early, supra.*

But these cases are in response to a specific public policy. As stated by Professor Small,

> Often a workman will have nearly a whole hand or foot mangled. *If he is compensated separately for each finger or toe lost,* either by separation or by total loss of use, *he might receive more than the amount allowable for the complete loss of the hand or foot.* Another workman might receive injuries to both arms and/or legs resulting in a permanent partial loss of use of those members. *If he is to be compensated for the partial losses of use, he might receive more than the amount allowable for the permanent partial impairment of the body as a whole. Such results were not intended by the Legislature.* Therefore, the Industrial Board and the Appellate Court in such cases have looked to the greater harms which might be involved rather than to the lesser individual ones. For example, the Appellate Court has held that where several fingers on a hand have been severed or rendered useless, compensation is to be determined, not by the value assigned to all the fingers individually, but by the degree or lost use in the entire hand, which under the statute means the forearm. The same result has been reached in cases of feet.
>
> SMALL, WORKMEN'S COMPENSATION LAW OF INDIANA § 9.6, p. 248 (1950), (footnotes omitted). (Our emphasis.)
>
> *See,* *Lauritzen* v. *United States Reduction Company, supra;*
> *In re Maranovitch, supra;*
> *In re Cannon, supra.*

*See also,* *Superior Construction* v. *Day, supra;*
*Trustees of Indiana University* v. *Rush, supra;*
*In re Hart* (1922),
77 Ind. App. 431, 133 N.E. 837.

As applied to this case, the policy thus evolved would prohibit recovery based upon addition of several amputations of toes or fingers on a single foot or hand if such addition might be greater than the amount allowable for the loss of the member itself.

Legislative changes[1] have obliterated the problem, both as to the foot and the hand. No reason remains to deny such additions. As previously indicated, § 31(a)(1) in its present form prevents a claimant from recovering more for the loss of all his toes on one foot than for the loss of the foot itself . . . 135 weeks of compensation for the loss of five toes against 175 weeks for the loss by separation of the foot below the knee joint. So *Lauritzen, In re Maranovitch,* and *In re Cannon* no longer have vitality to this factual situation.

As we read these cases, the overall policy is to prevent double (or unauthorized) recovery and protect against greater recovery for the sum of the parts than for the loss of the whole. This policy survives although unavailing to the Employer in this case.

The Board may therefore resort to § 31(a)(1) to award compensation for multiple amputations on a single foot or other member if within the general policy restrictions stated above.

In reaching our conclusion, we necessarily reject the Employer's contention that in this case the Board must grant compensation to Dipolito, if at all, based upon his permanent

---

1. Under the 1917 amended version of § 31 dealing with amputations, a claimant could recover more for losing five toes than for the loss of an entire foot . . . 150 weeks of compensation for five toes against only 125 weeks for the entire foot. A similar condition existed in relation to the hand . . . 180 weeks of compensation for the loss of four fingers and a thumb against only 150 weeks for the entire hand. *See, In re Cannon* (1917), 66 Ind. App. 1, 117 N.E. 658; *In re Maranovitch* (1917), 65 Ind. App. 489, 117 N.E. 530.

partial impairment, i.e., the partial loss of use, of his foot as a whole under § 31 (b) (2).

The Board has the duty and the discretion to find the claimant's injury and the amount of compensation deserved. Once the injury is determined, the Board's discretion in choosing a part of § 31 is restricted to the extent that its selection must encompass the category of injuries involved in the particular case. If the Board finds permanent partial impairment, its award must indeed be within the scope of § 31 (b). But if the Board grants compensation under § 31 (a), the award need only be sustained by the evidence and within the limits of recovery in the section applied. In support of the Board's discretion in finding the "injury" *see, Trustee of Indiana University* v. *Rush, supra; Western Construction Company* v. *Early, supra; Bucyrus Company* v. *Reisinger* (1922), 77 Ind. App. 361, 133 N.E. 516; *Kenwood Bridge Company* v. *Stanley, supra; In re Maranovitch, supra.*

The Board is the statutory finder of fact. IC 1971, 22-3-4-8 (Burns Code Ed.). Here, the evidence of permanent partial impairment to Dipolito's foot was conflicting.[2] The Board merely weighed this evidence and found that Dipolito's injuries represent "primarily the loss by amputation of the great toe, second toe and third toe of the right foot". Being within the scope of the evidence at the hearing and not violative of any public policy, the Board has not abused its discretion, and the award should be affirmed.

Affirmed.

White, J. and Sullivan, J., concurring.

NOTE.—Reported at 344 N.E.2d 67.

---

2. We note that in his Form 9 application for compensation, Dipolito did not allege permanent partial impairment or seek recovery for any injury to his right foot caused by the amputation of the head of the first metatarsal.