HILLTOP CONCRETE CORPORATION *v.* DEVERETT LEROY ROACH

[No. 2-1175A350. Filed August 24, 1977.]

---

*Thomas J. Reed, Reller, Mendenhall, Kleinknecht & Milligan,* of Richmond, for appellant.

*Bobby Jay Small,* of Indianapolis, *William R. Wilson,* of Lawrenceburg, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Hilltop Concrete Corporation (Hilltop) appeals from an award of compensation entered by the Full Industrial Board of Indiana (Board) in favor of Deverett Leroy Roach (Roach), claiming the finding of permanent partial impairment is contrary to law, the award of medical expenses was improper, and the Board abused its discretion by refusing to order Roach examined by a disinterested physician.

We affirm.

## FACTS

The evidence most favorable to the award below reveals the following:

On September 28, 1972, Roach suffered an industrial accident at Hilltop. As a result he experienced extreme back, abdominal and chest pain, and had to be hospitalized for five days with a crushed chest.

A jaundiced condition accompanied by severe abdominal pain necessitated a fifteen day rehospitalization a week later . . . a biopsy revealing a liver obstruction causing bile to collect in the liver.

Following discharge Roach's jaundice condition did not abate, however, and his weight continued to decrease. Consequently, he

underwent surgery in December, 1972. That surgery revealed a complete obstruction of the bile duct by scar adhesions and residue as a result of his crushing injury and widespread laceration of the liver.

Roach's physician, Dr. Scudder, indicated that the liver was scarbound, producing an almost cirrhosis-like condition, causing Roach to suffer a seventy-five (75%) percent permanent disability.

Following this month long hospitalization, Roach's recovery was limited. Roach, his wife, and his previous foreman gave testimony on his permanently weakened condition . . . he was unable to engage in any extended or strenuous activity, suffered abnormally from cold weather, became forgetful, suffered continuous abdominal and chest pains, and never regained his original weight.

Roach returned to employment with Hilltop in July of 1973; however, even the minimal duties he was assigned exhausted him. He finally terminated his employment with Hilltop in September of 1973 to supervise running the family farm.

Roach was again hospitalized for three days in February of 1974 (the 1974 hospitalization) for severe abdominal pains, with an elevated alkaline phosphate level indicating continuing scarring action in the liver as a result of the crushing injuries earlier suffered.

Dr. Scudder testified that this contention would result in a reduced life span of fifteen (15) or twenty (20) years, poor digestion, continuing weight loss, and an inability to maintian strength in order to perform work. He also found that the 1974 hospitalization was connected with his original injury (acute pyloric spasms were related to the small bowel contusions originally suffered).

Following the 1974 hospitalization, Roach continued to suffer pain and other symptoms predicted by Dr. Scudder.

On August 3, 1974, Roach filed his Form 9 application; and a hearing was held before the Single Hearing Member on March 6, 1975. At that hearing, Dr. Scudder testified extensively on

Roach's condition and was fully cross-examined by Hilltop. Although Hilltop had previously received Dr. Scudder's medical reports later claimed to be incomplete, Hilltop never objected to Dr. Scudder's right to testify or any aspect of his testimony.

Four days after the hearing, Hilltop made application for the appointment of a disinterested physician to examine Roach.

On July 3, 1975, Hilltop's application for a disinterested physician was denied, and Roach was granted an award for permanent partial impairment of seventy-five (75%) percent of the body as a whole and medical expenses arising out of the 1974 hospitalization.

Hilltop made application on July 16, 1975, for review by the Full Industrial Board of the Single Hearing Member's award, and on August 11, 1975, the Board gave notice of its hearing to be held on September 8, 1975.

On August 22, 1975, Hilltop made application for a continuance because it had retained a specialist to examine Roach, who could not make his examination before the hearing date.

The Board denied Hilltop's petition for a continuance on September 8, 1975, and held its hearing on that date as scheduled.

On October 30, 1975, the Board entered an award for Roach, the same in substance as that of the Single Hearing Member.

## ISSUES

Hilltop poses three issues for review:

ISSUE ONE: Did the Board abuse its discretion by denying Hilltop a continuance for the purpose of having Roach examined by Hilltop's physician and failing to order on its own that Roach be examined by a disinterested physician?

ISSUE TWO: Was there substantial, competent evidence to support the finding that Roach suffered a permanent partial impairment of seventy-five (75%) percent of the body as a whole?

ISSUE THREE:    Was there a sufficient connection between Roach's accident and medical problems necessitating the 1974 hospitalization to permit the Board to award medical expenses to Roach for that hospitalization?

PARTIES CONTENTIONS--The contentions of the parties on the above issues will be discussed with each issue separately.

## DECISION

Issue One

CONCLUSION--The Board did not abuse its discretion by denying Hilltop a continuance for the purpose of having Roach examined by Hilltop's physician or failing to order on its own that Roach be examined by a disinterested physician.

Hilltop's attack centers on the testimony of Dr. Scudder, claiming his testimony was incompetent and should have been excluded as violative of Indiana Code section 22-3-3-6 (section 6) which, in pertinent part, imposes a general duty on the employee's (Roach's) physician to apprise the employer of his medical findings and provides for sanctions (exclusion of the physician's testimony) in the event of the physician's failure to do so.[1]

---

1.   Indiana Code section 22-3-3-6 reads in pertinent part:

In all cases where an examination of an employee is made by a physician or surgeon engaged by the employee, and the employer has no physician or surgeon present at such examination, it shall be the duty of the physician or surgeon making the examination to deliver to the employer or his representative a statement in writing of the conditions evidenced by such examination, and such statement shall disclose all facts that are reported by such physician or surgeon to the employee. Such statement shall be furnished to the employer or his representative as soon as practicable, but not later than ten (10) days before the time the case is set for hearing. If such physician or surgeon fails or refuses to furnish the employer, or his representative, with such statement, then such physician or surgeon shall not be permitted to testify before the industrial board as to any facts learned in such examination. All of the requirements herein shall apply to all subsequent examinations made by a physician or surgeon engaged by the employee.

All statements of physicians or surgeons required by this section, whether those engaged by employee or employer, shall contain information regarding the history of the injury, claimed injury, as given by the patient, the physical or mental condition of such employee, and the nature and extent or amount of disability or impairment, if any, of such employee.

Hilltop concludes that the resultant nature of Dr. Scudder's testimony, along with the fact it centered on examination of Roach one year before the hearing, compelled the Board to grant Hilltop's motion for a continuance, or to order on its own an examination of Roach by a disinterested physician. When the Board denied Hilltop a continuance and ordered no independent examination of Roach, Hilltop contends the Board abused its discretion and committed reversible error.

The Board is necessarily vested with wide discretion in deciding whether to appoint on its own a disinterested physician and hear additional testimony beyond the record of the Single Hearing Member before it.[2] In deciding whether to hear additional evidence, "its action will not be disturbed on appeal unless the record shows an abuse of discretion."[3]

Because Hilltop's abuse of discretion argument relies on allegedly faulty medical reports improperly considered by the Single Hearing Member, we are unable to intelligently review the Board's discretion as we do not have before us the reports of Dr. Scudder which the Board had to evaluate for compliance with section 6. There are reports attached as appendices to Hilltop's brief, many of which are so poorly reproduced as to be unreadable.

Thus, although section 6 is exact as to the required content of a physician's report, we could not say with certainty the reports (before us) were so faulty that a Board would have been compelled

---

2. Indiana Code section 22-3-4-11 states:

The board or any member thereof *may*, upon the application of either party or upon its own motion, appoint a disinterested and duly qualified physician or surgeon to make any necessary medical examination of the employee and to testify in respect thereto. Said physician or surgeon shall be allowed traveling expenses and a reasonable fee to be fixed by the board.

The fees and expenses of such physician or surgeon shall be paid by the state only on special order of the board or a member thereof. (emphasis added)

3. B. SMALL, WORKMEN'S COMPENSATION LAW OF INDIANA § 12.5, at 384 (1950) (footnote omitted). *See also, e.g., Burton v. Rock Road Constr. Co.* (1969), 145 Ind. App. 683, 252 N.E.2d 445; *Ruegamer v. Haynes Stellite Co.* (1960), 130 Ind. App. 695, 167 N.E.2d 725.

to exclude the evidence based on Dr. Scudder's testimony had the question been expeditiously raised.

The propriety of Dr. Scudder's testimony was not timely challenged by Hilltop, though. Section 6 appears to burden the party seeking to avail himself of the enumerated sanctions with taking positive action. This sanction, "such physician shall not be permitted to testify," necessarily implies a requirement that someone object to the physician's testimony at the earliest possible time.

In the proceedings before the Single Hearing Member, Hilltop never objected to the testimony of Dr. Scudder but instead fully and adequately cross-examined him on his findings and conclusions. Hilltop likewise never made a motion to strike such testimony during the hearing, or thereafter.[4]

---

4. Hilltop's statement that its petition for the appointment of a disinterested physician was a motion to strike Dr. Scudder's testimony is not borne out by the motion:

Defendant, Hilltop Corporation, respectfully moves the Board as follows:

1. On March 6, 1975, a hearing was held in the Court House, Switzerland County, Indiana in this case.

2. Dr. Gary Scudder, M.D., Lawrenceburg, Indiana, the personal physician of Deverett Leroy Roach, testified on behalf of the plaintiff.

3. Dr. Scudder related to the Board his opinion that Deverett Leroy Roach was 75% permanently and partially disabled [sic] as a proximate result of the injuries Deverett Leroy Roach suffered on September 28, 1972.

4. Dr. Gary Scudder, M.D. failed to report his findings of permanent partial disability [sic] to Defendant as required by IC 22-3-3-6.

5. Defendant was surprised by the testimony of Dr. Scudder, which was subsequently developed upon cross-examination to be based upon blood tests taken in February, 1974, more than 1 year prior to the date of hearing.

6. Substantial justice requires the appointment of a disinterested physician, who is a specialist in diseases of the liver, kidneys and traumatic injuries to the same to examine Plaintiff, order necessary tests and determine the degree of Plaintiff's impairment if any.

WHEREFORE, Defendant respectfully moves the Industrial Board to appoint a disinterested physician from the faculqy [sic] of the University of Cincinnati Medical College to examine the Plaintiff as outlined above, costs to be paid by the Defendant, including the cost of Plaintiff's travel and expenses to Cincinnati, Ohio for examination, and for all other relief.

Both parties, during the proceedings before the Board and in their briefs to this court, confuse the concepts of "disability" and "impairment" and use them interchangeably. See Perez v. United States Steel Corp. (1977), 172 Ind. App. 242, 359 N.E.2d 925.

Rather, Hilltop chose to attempt to rebut Dr. Scudder's testimony by petitioning four days after the hearing for the appointment of a disinterested physician to examine Roach--hardly a timely objection to Dr. Scudder's testimony.

The peril of failing to adequately and timely object to evidence before the Single Hearing Member has been discussed in Indiana:

> As to the objections claimed to have been "renewed" in appellant's motion, we find that the record does not show they were made before the Hearing Member at any time during the hearing. . . . These were not renewals of objections therefore, but were objections being made for the first time before the Full Board. In "Workmen's Compensation Law of Indiana" (The Bobbs-Merrill Company, Inc., 1950), by Ben F. Small, the following statement is made:
>
> > "Consistent with general procedures, one who does not take advantage of his proof opportunities at all levels is likely to find that he has waived them. He should make the most of his single member hearing, for example, or he may not be allowed to do better before the full Board." § 12.6, 1958 Supp., p. 89.[5]

We therefore conclude the Board did not abuse its discretion in refusing to appoint a disinterested physician on its own to secure additional evidence on Roach's physical condition.

The same rationale compels us to conclude that the Board likewise did not abuse its discretion in denying Hilltop a continuance to procure an examination of Roach by its own physician. The request for a continuance arose out of objection to Dr. Scudder's testimony . . . an issue which was not timely raised. Hilltop's failure to raise the issue at the earliest possible time was therefore adverse to the policy of the Workmen's Compensation Act that the Board determine questions before it speedily and expeditiously and grant continuances only sparingly.[6]

---

5. *Ruegamer v. Haynes Stellite Co.*, *supra* at 703, 167 N.E.2d at 729.

6. *See* IND. RULES & REGS. (22-3-4-6)-8 (Burns 1976) (Procedure Rule 12) (emphasis added):

> *The policy of the industrial board,* implementing the spirit of the Workmen's Compensation Act, *is to determine all questions* brought before it as *speedily and expeditiously* as possible.

Because the Board may well have found the reports of Dr. Scudder in compliance with section 6, and because of Hilltop's lack of diligence in raising the issue, we cannot conclude the Board abused its discretion in failing to seek additional evidence on its own and in denying Hilltop a continuance in which to secure additional evidence to be presented to the Board.[7]

Issue Two

CONCLUSION — There was substantial, competent evidence to support the Board's finding that Roach suffered a permanent partial impairment of seventy-five (75%) percent of the body as a whole.

Hilltop assumes the position that Dr. Scudder's testimony was incompetent and not a proper subject for consideration by the Board, and that there was no remaining substantial evidence, considered either alone or in conjunction with the incompetent

The secretary of the industrial board shall give written notice by mail to all parties or their counsel, of each hearing scheduled before either a single hearing member or the full industrial board.

*There shall be no continuances granted to either party except for good cause* shown by written motion. All requests for continuances must be filed not less than 15 days before a scheduled hearing. Any request for continuance filed less than 15 days prior to a scheduled hearing will be denied unless there shall be conclusively shown in the motion or petition that, in addition to good cause for the continuance, an emergency exists excusing the late filing of the request.

If a request for a continuance by either party or both parties is refused by the industrial board, then in that event, the industrial board shall proceed to make any adjudication necessary for a final determination of a pending application.

This rule shall apply to hearings before a single hearing member of the board, as well as hearings on review before the full industrial board of Indiana.

7. *See* IND. RULES & REGS. (22-3-4-7)-2 (Burns 1976) (Procedural Rule 18):

The facts upon review by the full board will be determined upon the evidence introduced in the original hearing, without hearing new or additional evidence, at the discretion of the industrial board. The party desiring to introduce new or additional evidence shall file an affidavit setting forth therein the names and residences of the witnesses he wishes to have testify before the full board, the facts to which they will testify, or, if the new evidence be documentary, then a copy of the document he proposes to introduce setting forth a good reason for failure to introduce such evidence at the original hearing.

If such petition should be granted, the opposing party shall have the right to introduce such additional evidence as may be necessary in rebuttal. Thirty (30) minutes will be allotted each side for the presentation of its case.

evidence given by Dr. Scudder which would support a finding of permanent partial impairment.

It is the Board which has the duty to find the nature and extent of a claimant's injury and to grant the appropriate compensation under the Act. *See, e.g., Bethlehem Steel Corp. v. Dipolito* (1976), 168 Ind. App. 417, 344 N.E.2d 67; *Trustees of Indiana Univ. v. Rush* (1934), 99 Ind. App. 203, 192 N.E. 111; *Western Constr. Co. v. Early* (1924), 81 Ind. App. 490, 142 N.E. 396; *Kenwood Bridge Co. v. Stanley* (1917), 66 Ind. App. 563, 117 N.E. 657. In doing so the Board must weigh all the relevant evidence, including any expert testimony and claimant's own statement regarding the extent and character of his injury. *See, e.g., Bethlehem Steel Corp. v. Dipolito, supra; Kenwood Erection Co. v. Cowsert* (1953), 124 Ind. App. 165, 115 N.E.2d 507; *Indiana Limestone Co. v. Ridge* (1929), 89 Ind. App. 689, 167 N.E. 617.

Appellate review of such decisions is limited. Our role is merely to determine if the evidence presented at the hearing supports the Board's Findings of Fact, and if those Findings in turn support the Board's award. We will not disturb an award if the amount of compensation awarded was within the limits of the section applied and the choice of that particular section of the Act was within the bounds of the Board's discretion as controlled by the facts presented at the hearing. *See, e.g., Bethlehem Steel Corp. v. Dipolito, supra; Western Constr. Co. v. Early, supra.*

Hilltop does not claim Dr. Scudder's testimony would not support the award if properly considerable. On this point alone we must sustain the Board's findings and award because, as established in ISSUE ONE, we are unable to conclude the Board should have excluded Dr. Scudder's testimony.

Dr. Scudder performed the function of applying medical labels and a percentage figure[8] on what he and other witnesses testified

---

8. It is clear from Dr. Scudder's testimony as a whole that when he testified Roach was "seventy-five percent disabled by this liver injury and [its] effects," he interchanged terms and actually was speaking of permanent partial impairment. The Board correctly construed Dr. Scudder's testimony as permanent partial impairment. *See Crown Products Co. v. Brandenburg* (1955), 126 Ind. App. 48, 129 N.E.2d 134.

to as Roach's condition: permanently reduced weight, abnormal fatigue from any activity, inability to handle certain physical activity (such as a jolting tractor), constant internal pains, inability to bear cold weather, loss of bowel control, trouble sleeping, nervous flinches, memory lapses, and a reduced life span.

Thus, there was substantial evidence that Roach was impaired . . . and suffered loss of a physical function.

Issue Three

CONCLUSION—There was a sufficient connection between Roach's accident and medical problems necessitating the 1974 hospitalization to permit the Board to award medical expenses to Roach for that hospitalization.

Hilltop admits it could be obligated under Indiana Code section 22-3-3-4 to pay all medical expense incurred by Roach for treatments which tend to reduce his impairment but claims there was no evidence to connect Roach's 1974 stomach pains (and resultant hospitalization) with his prior chest injuries.

For standards in applying the above statute, we are directed to *Mousley v. Curry* (1954), 124 Ind. App. 280, 117 N.E.2d 280, in which this Court required the Board to make a specific finding that the medical treatment ordered would tend to limit or reduce the disability or impairment.

*Mousley* is not relevant. It dealt with the predecessor of Indiana Code section 22-3-3-4 which provided that medical care be furnished by the employer for 180 days and thereafter as the Board determined such treatment would tend to limit or reduce the disability or impairment. *See* ch. 162, § 3, [1947] Ind. Acts 523, 527.

The present law (22-3-3-4) has removed the initial time limit of 180 days and provides the employer shall furnish medical care before an adjudication of permanent impairment as follows:

*After an injury and prior to an adjudication of permanent impairment,* the *employer shall furnish* or cause to be furnished, free of charge to the employee, *an attending physician for the*

*treatment of his injuries, and* in addition thereto such surgical, *hospital* and nursing *services and supplies as the attending physician* or the industrial board *may deem necessary.* If the employee is requested or required by the employer to submit to treatment outside the county of employment, said employer shall also pay the reasonable expense of travel, food and lodging necessary during the travel, but not to exceed the amount paid at the time of said travel by the state of Indiana to its employees. *Ind. Code* § 22-3-3-4 (emphasis supplied).

Thus, the Board's finding that the 1974 hospitalization "expenses are statutory expenses and should be paid by [Hilltop]" must be sustained because there was substantial evidence to link Roach's original injury and the 1974 hospitalization.[9]

The Board had before it Dr. Scudder's testimony from which it could reasonably have found a link between Roach's original injury and his 1974 hospitalization. *See* note 9 *supra.*

---

9. Dr. Scudder testified:

Q Doctor, Mr. Reed asked you about this hospitalization on February 10, 1974. When you said Mr. Roach was in the hospital at that time for three days, in your opinion was there any connection between the injuries he received back in September, 1972, and this hospitalization of February 10, 1974?

A The only connection I could see from that would be if the diagnosis of acute pyloric spasm, as entered in his discharge summary, could be traced back to the contusion of the first part of the small bowel in '72. One would only be able to do this by opening his abdomen back up. That would be a rather harsh way to prove it.

Q The problems he had in the February, 1974, hospitalization were in the same area of his abdomen as prior?

A Same general area but, as I say, since we have only indirect means to measure and cannot directly look at it without subjecting him to further surgery, one could not prove it beyond a shadow of a doubt.

. . .

A If his liver would continue to scar down and if his digesting would continue to be poor and he would continue to have low weight, he would probably have a decreased life span, maybe fifteen or twenty years.

Q Have you evidence in your record indicating his liver has continued to scar down?

A Yes, because of the elevated alkaline phosphatese which was mentioned in the discharge summary. This indicates there is continued activity within the liver to repair itself.

Q That would be as of February, '74.

A Right, this blood test was drawn and run on 2/12/74.

Record at 74, 71.

Hilltop urges the kind of medical precision seldom attainable. As noted in SMALL, *supra* note 3, § 12.6, at 139 (1976 Cum. Supp.):

> Imbued, and perhaps embrangled a bit too, with the necessity for precise pathological certainty in their approach to conditions of harm, most medical men are reluctant to venture opinions except in the clearest cases. Consequently, the expert testimony on medical questions is, in many cases, equivocal. However, the Appellate Court has again stated that medical evidence couched in such terms as "may have," "could have," and the like, is sufficient if supported by other competent evidence.

The Board therefore properly assessed Roach's 1974 hospitalization expenses against Hilltop under Indiana Code section 22-3-3-4.

No reversible error being demonstrated, we affirm the award.

Sullivan, P.J. and White, J. concur.

NOTE—Reported at 366 N.E.2d 218.