Jacqueline Kay MORPHEW,
Respondent-Appellant,

v.

Melvin E. MORPHEW,
Petitioner-Appellee.

No. 1–880A216.

Court of Appeals of Indiana,
First District.

April 23, 1981.

Robert E. Stewart, Guido & Stewart, Danville, for respondent-appellant.

John M. Howard, Jr., Howard & Lawson, Danville, for petitioner-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Jacqueline Kay Morphew (Jacqueline) appeals from the decision of the Hendricks Superior Court dissolving her marriage to Melvin E. Morphew (Melvin), dividing their property, denying her maintenance, awarding her custody of the two minor children, and ordering Melvin to pay child support. We affirm.

## STATEMENT OF THE FACTS

Jacqueline and Melvin were married on July 31, 1960. At the time of their marriage, they did not own substantial property and they both worked. Approximately sixteen months after their marriage, Jacqueline stopped working in order to raise their family. Other than working for nine months as a teacher's aide and selling cookware with her sister for a short time, Jac-

queline did not work outside of the home during the remainder of the marriage. Melvin held various jobs during the marriage, and at the time of the dissolution of the marriage he was a general foreman at the Allison Division of General Motors Corporation in Indianapolis, Indiana. His base salary was approximately two thousand one hundred twenty-six dollars ($2,126) per month. However, Melvin had worked a considerable amount of overtime in 1978 and 1979 so that his gross income was approximately thirty-three thousand eight hundred eighty dollars ($33,880) and forty thousand five hundred seventeen dollars ($40,517) respectively. Melvin continued to support his wife and children until the time of the dissolution hearing.

At the dissolution hearing, Jacqueline contended she was physically unable to work and requested the court to order Melvin to pay her maintenance. Jacqueline testified that she had a problem with her legs in that they were painful and did not move at times. This problem was continuous; however, it would become worse if Jacqueline engaged in any strenuous activity. She stated that when she had a severe attack, she would be down both mentally and physically, and her neighbor and sister would take her to the grocery store and run other errands for her. Despite her physical problems, Jacqueline felt she was able to take care of her children and their home.

After a hearing on the petition for dissolution, the trial court awarded custody of the two minor children to Jacqueline. Melvin was ordered to pay fifty dollars ($50) per child, per week in child support along with the medical, dental, optical, and prescription expenses of the children. The trial court ordered that the house owned by Melvin and Jacqueline was to be owned by them as tenants in common. Jacqueline would be allowed to live in the house until the youngest child turned twenty-one or became emancipated, whichever came first. The court ordered both Melvin and Jacqueline to pay one-half of the mortgage payments, taxes, and insurance for the house. Jacqueline is to pay for all the maintenance of the house except for major repairs exceeding one thousand dollars ($1,000), the excess of which is to be paid equally by the parties. Jacqueline also received the household goods which were in the house, her life insurance policy, her individual bank account, and a 1974 Comet automobile. Melvin received the boat and trailer, his personal property, the household goods located at his residence, a 1979 Oldsmobile automobile, all stocks, bonds, and employee benefits through his employer, his life insurance subject to beneficiary restrictions, his fishing equipment, and his individual bank account. In addition, Melvin was ordered to pay all marital obligations and debts which totalled approximately eight to nine thousand dollars ($8,000-$9,000).

## ISSUES

Jacqueline has raised the following issues for our consideration:

1. Whether the trial court's special finding as to the amount of Melvin's earnings is substantiated by the evidence.

2. Whether the trial court erred as a matter of law by ordering that Melvin could claim the children as dependents for federal and state income tax purposes.

3. Whether the trial court erred in excluding Jacqueline's testimony as to her physical condition.

4. Whether the trial court abused its discretion in finding that Jacqueline was not physically or mentally incapacitated to the extent that her ability to support herself was materially affected.

5. Whether the trial court abused its discretion in determining the amount of child support to be paid by Melvin.

6. Whether the trial court abused its discretion in making the disposition of the marital property.

## DECISION

*Issue One*

Pursuant to Ind.Rules of Procedure, Trial Rule 52(A), Melvin requested special findings be made by the trial court. The trial

court did make extensive findings of fact and conclusions of law which included the following finding of fact: "13. That the husband is employed at Detroit Diesel Allison Division of General Motors Corporation and effective December 1, 1979, his base salary is Two Thousand One Hundred Twenty-six and 44/100 Dollars ($2,126.44) per month." Jacqueline contends this finding is erroneous since Melvin's gross income was forty thousand, five hundred sixteen dollars and ninety-eight cents ($40,516.98) in 1979 and thirty-three thousand eight hundred eighty dollars ($33,880) in 1978. Further, she states, the court's Finding of Fact No. 13 is prejudicial to her since Melvin's income must be taken into account by the trial court when dividing the marital property and ordering child support.

Since the purpose of special findings is to provide the parties and reviewing courts with the theory on which the judge decided the case in order that the right of review for error may be effectively preserved, whether the findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached. *In re Marriage of Miles*, (1977) 173 Ind.App. 5, 362 N.E.2d 171, *trans. den.* When determining whether they disclose a valid basis, we will accept the findings if they are supported by evidence of probative value. *Id.* We will, therefore, accept the trial court's Finding of Fact No. 13 if there is evidence of probative value to support it.

Although Melvin's gross income was greater than his base salary in 1977, 1978, and 1979 as a result of the considerable amount of overtime he worked, he was not guaranteed overtime in the future. His employer was reducing the amount of overtime work available to employees, and Melvin was not certain that he could continue physically to work seven days per week. In light of this testimony, we find nothing erroneous about the trial court's Finding of Fact No. 13.

*Issue Two*

Jacqueline contends the trial court also erred in making its Conclusion of Law No. 12 which states: "12. That the husband has contributed the major portion of support and maintenance for such minor children and shall thereby be entitled to claim them as dependents on his Federal and State Income Tax Returns." This conclusion, she states, can only be considered to operate prospectively since the trial court in its Conclusion of Law No. 35 ordered the parties to file a joint tax return for the taxable year of 1979. Jacqueline alleges the trial court exceeded its statutory authority and jurisdiction because Ind.Code 31–1–11.5–12 (Supp.1980), which authorizes the trial court to order child support, is silent as to the tax liability of the parties.

When construing special findings made by the trial court, we will construe them together and liberally in support of the judgment. *In re Marriage of Miles, supra.* We note that Conclusion of Law No. 35 does not absolutely require Melvin and Jacqueline to file a joint tax return in 1979, but instead, they are to do so only if such action would be in their best interests. However, we do agree with Jacqueline that Conclusion of Law No. 12 operates prospectively. Although the trial court did state Melvin has contributed the major portion of support and maintenance for the minor children, Conclusion of Law No. 12 immediately follows the conclusions of law which set out Melvin's support obligation and precedes the conclusion of law which requires Melvin to maintain health and life insurance policies for the benefit of his children. Further, if the trial court had intended for this conclusion of law to be effective only for 1979, it could have so stated and included it within Conclusion of Law No. 35 which deals with the joint filing of the parties' income tax returns for 1979.

We turn now to the issue, which is one of first impression in Indiana, of whether the trial court exceeded its statutory authority and jurisdiction in providing for

the dependency exemptions.[1] The right of the United States to collect federal taxes has always been conceded to be independent of state law. *United States v. Union Central Life Insurance Co.,* (1961) 368 U.S. 291, 82 S.Ct. 349, 7 L.Ed. 294; *Leuschner v. First Western Bank & Trust Co.,* (9th Cir. 1958) 261 F.2d 705; *In re Cal-Neva Lodge, Inc.,* (D.Nev.1960) 186 F.Supp. 187; *Bensinger v. Davidson,* (S.D.Cal.1956) 147 F.Supp. 240. In the case of *Vinet v. Vinet,* (1966) La.App., 184 So.2d 33, the Louisiana Court of Appeal held that it was outside the jurisdiction of a state court to pass on the question of which party is to receive the income tax exemption for dependents because the state court had no jurisdiction over the federal taxing authority. The Louisiana Court of Appeal stated that the determination of which party received the exemption was one for the proper taxing authority upon the basis of which party provided more than one-half of the total support. At the time of the *Vinet* decision, I.R.C. § 152(a)[2] was the controlling criterion for which parent received the exemption. However, the Internal Revenue Code was amended in August 1967 to provide a special support test in the case of children of divorced parents. I.R.C. § 152(e) provides:

"(e) Support test in case of child of divorced parents, etc.—

"(1) General Rule.—If—

"(A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or

separate maintenance, or who are separated under a written separation agreement, and

"(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody).

"(2) Special rule.—The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if—

"(A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and

"(ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or

"(B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for each

1. We note that two prior cases in Indiana have dealt with the issue of which parent is to receive the income tax dependency exemption, *Jahn v. Jahn,* (1979) Ind.App., 385 N.E.2d 488; *Flowers v. Flowers,* (1972) 154 Ind.App. 377, 289 N.E.2d 797; however, neither case addressed the jurisdiction and statutory authority of the trial court to make such a provision. In *Jahn,* we held the trial court did not abuse its discretion in refusing to switch the tax exemptions from the father to the mother, because the father met the Internal Revenue Code guidelines; whereas in *Flowers,* the wife was ordered at a modification hearing to comply with the divorce decree which had incorporated the parties' agreement that the husband be

allowed to claim their three children as dependents for income tax purposes.

2. I.R.C. § 152(a) states in part:

"(a) General definition.—For purposes of this subtitle, the term 'dependent' means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer):

"(1) A son or daughter of the taxpayer, or a descendant of either,

"(2) A stepson or stepdaughter of the taxpayer, . . ."

of such children) for the calendar year, and

"(ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. "For the purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support.

"(3) Itemized statement required.—If a taxpayer claims that paragraph (2)(B) applies with respect to a child for a calendar year and the other parent claims that paragraph (2)(B)(i) is not satisfied or claims to have provided more for the support of such child during such calendar year than the taxpayer, each parent shall be entitled to receive, under regulations to be prescribed by the Secretary, an itemized statement of the expenditures upon which the other parent's claim of support is based.

"(4) Exception for multiple-support agreement.—The provisions of this subsection shall not apply in any case where over half of the support of the child is treated as having been received from a taxpayer under the provisions of subsection (c).

"(5) Regulations.—The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subsection."

In passing this statute, Congress expressed the desire for state courts to resolve the issue of which parent was to receive the exemption at the time the court considered the financial arrangements which were to apply between the parents. S.Rep. No. 488, 90th Cong., 1st Sess. ——, *reprinted in* [1967] U.S.Code Cong. & Ad.News 1527, 1529. Since Congress has provided in the Internal Revenue Code that state courts may enter such decrees delineating which

parent is to receive the exemption, we find that the trial court is not exercising authority solely vested in the federal taxing authority.[3] *Pettitt v. Pettitt,* (1972) La.App., 261 So.2d 687; *accord, Grider v. Grider,* (1979) Ala.Civ.App., 376 So.2d 1103.

We also conclude the trial court had both subject matter jurisdiction and the statutory authority to determine which parent could claim the exemption for 1979. As this court stated in *Farley v. Farley,* (1973) 157 Ind.App. 385, 396, 300 N.E.2d 375, 382, *trans. den.* (1974):

"Jurisdiction is defined as the legal power to entertain any matter or proceeding and to act therein and the power to act must be derived from the Constitution or from some statute. *State ex rel. Wilson v. Howard Circuit Court* (1957), 237 Ind. 263, 145 N.E.2d 4. This general power over a class of cases is called subject matter jurisdiction. Jurisdiction in a more limited application relates to the right to entertain a particular case within that class of cases. *Pease v. State* (1920), 74 Ind.App. 572, 129 N.E. 337. Finally, jurisdiction refers to the particular parties that are brought before the court."

The controversy before the trial court was a dissolution of marriage over which the Hendricks Superior Court No. 1 had subject matter jurisdiction. Ind.Code 33–5–25–5 (Supp.1980). Furthermore, the trial court did not exceed its statutory authority by determining that Melvin was entitled to the exemptions. When determining child support, the trial court must follow IC 31–1–11.5–12 (Supp.1980) which states in part:

"Sec. 12. Child Support. (a) In an action pursuant to section 3(a) or (b), the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:

"(1) the financial resources of the custodial parent;

---

**3.** We do note that the final determination of whether a non-custodial parent is to receive the exemption under I.R.C. § 152(e)(2)(A) is made by the proper federal taxing authority since the

parent must show that he or she has provided at least six hundred dollars ($600) for the support of the child.

"(2) standard of living the child would have enjoyed had the marriage not been dissolved;

"(3) physical or mental condition of the child and his educational needs; and

"(4) financial resources and needs of the non-custodial parent.

"(b) Such child support order may also include, where appropriate:

"(1) sums for the child's education in schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses; and

"(2) special medical, hospital or dental expenses necessary to serve the best interests of the child.

"(c) As part of such child support order the court may set apart such portion of the property of either parent or both parents, as may seem necessary and proper for the support of the child."

As set out in the statute, two factors to be considered by the trial court are the financial resources of the custodial parent and the financial resources of the non-custodial parent. The ability of a parent to claim his or her children as an exemption for income tax purposes is a factor in the financial resources of the parent. Claiming an exemption not only defrays the expenses of supporting the child, it is also necessary so that a parent may receive a deduction from income taxes for medical expenses of the child which he or she paid. I.R.C. § 213. Therefore, the trial court did not exceed its statutory authority in determining that Melvin is entitled to claim his children as dependents for income tax purposes.

*Issue Three*

During the direct examination of Jacqueline by her counsel at the dissolution hearing, the following testimony was elicited:

"Q. Are you presently under Doctor's care?

"A. Yes, I am.

"Q. Under whose Doctor, which Doctor?

"A. Dr. Baker.

"Q. How long have you been with him?

"A. About ten years.

"Q. And what does he treat you for?

"MR. HOWARD: To which I'll object, your honor, uh . . . . she can describe the kind of treatments she gets, if she gets shots if she gets exercises, if she gets bandages, if she gets x-rays, so forth, but as far as getting into medical, legal expert type testimony she is not competent.

"THE COURT: Objection sustained.

"Q. Tell us your symptoms, please?

"A. Well . . . . I have problems with my legs. And uh . . .

"Q. (interposing) What kind of problems?

"A. A muscle disease.

"MR. HOWARD: I object to the characterization as muscle disease. She is not competent. . . .

"A. Called fibrosis. . . .

"THE COURT: (interposing) Uh . . . objection sustained." (Record at 212–13.)

Jacqueline contends the trial court erred in sustaining the objection and excluding her testimony as to her medical condition. She states that in Indiana parties to an action may testify as to their medical condition, diseases, and ailments that are within their knowledge and cites us to *Indiana Limestone Co. v. Ridge*, (1929) 89 Ind.App. 689, 167 N.E. 617; *Kenwood Erection Co. v. Cowsert*, (1953) 124 Ind.App. 165, 115 N.E.2d 507; *Bethlehem Steel Corp. v. Dipolito*, (1976) 168 Ind.App. 417, 344 N.E.2d 67; and *Hilltop Concrete Corp. v. Roach*, (1977) Ind.App., 366 N.E.2d 218. We would agree with Jacqueline that these cases support the proposition that a lay witness may testify about the extent and character of his or her illness; however, they do not support Jacqueline's contention that she could testify as to her diagnosis or prognosis. In *Indiana Limestone v. Ridge, supra*, a workmen's compensation claimant was allowed to testify that as a result of an injury to his foot, the impairment of the foot was seventy-five per cent. This Court held that he could testify as to the amount of impairment because he was testifying to a fact based upon his experience. Likewise in *Kenwood Erection Co. v. Cowsert, supra*,

we held that Cowsert could testify as to the percentage of his impairment because this was a fact regarding which he had personal knowledge and experience. However, we stated that Cowsert could not testify as to the permanency of his condition of impairment because this was a medical question upon which only expert testimony was competent. In *Bethlehem Steel Corp. v. Dipolito, supra,* the appellee testified that he had lost three toes. This Court stated in *Bethlehem Steel* and *Hilltop Concrete Corp. v. Roach, supra,* that the Industrial Board in making its determination must weigh all the evidence including the claimant's character of his injuries. However, in *Hilltop Concrete Corp.* there was no issue raised as to the claimant's testimony regarding his injury.

 These cases illustrate that although a lay witness may testify about his or her illness, lay testimony or opinion must be limited to or based upon facts of which the witness has knowledge. However, "[w]ith regard to diagnosis, causes and effects of disease, and other matters of medical science, skill, and practice, knowledge of which is confined to those trained for the profession, opinions of lay or nonexpert witnesses are not competent evidence ..." 31 Am.Jur.2d *Expert and Opinion Evidence* § 95 (1967). *See, United States v. Hoxsey Cancer Clinic,* (5th Cir. 1952) 198 F.2d 273, *cert. den.* 344 U.S. 928, 73 S.Ct. 496, 97 L.Ed. 714, *reh. den.* 345 U.S. 914, 73 S.Ct. 642, 97 L.Ed. 1348, *enforced sub nom. In re United States,* (5th Cir. 1953) 207 F.2d 567, *cert. den.* 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398; *United States v. Articles of Food and Drug,* (E.D.Wis.1978) 444 F.Supp. 266; *Combined American Insurance Co. v. McCall,* (Tex.Civ.App.1973), 497 S.W.2d 350. Jacqueline's testimony which the trial court excluded concerned a diagnosis of the problem which she had with her legs. Clearly, the diagnosis of a muscle disease is outside

the skill and knowledge of a lay witness. As Judge Thompson stated in *Hurst v. Reeder,* (1927) 86 Ind.App. 294, 296, 157 N.E. 101, 102, "[w]e concede the law to be, as stated by appellant, that questions requiring scientific or expert knowledge can be answered only by those possessing the requisite skill and knowledge to give their answers probative value, and persons not qualified are not competent witnesses as to such questions. [Citations omitted.]" Accordingly, we find the trial court's exclusion of Jacqueline's testimony was not an abuse of discretion.

*Issue Four*

At the dissolution hearing, Jacqueline testified as to her opinion that she could not work as a result of these ailments. Jacqueline's neighbor and her sister corroborated Jacqueline's testimony about her physical problems. However, the trial court refused to award maintenance to Jacqueline, finding that she was not physically or mentally incapacitated to the extent that her ability to support herself was materially affected.[4] This finding, Jacqueline states, is contrary to law and constitutes an abuse of the trial court's discretion. She contends her testimony was uncontradicted and therefore the trial court's decision was clearly against the logic and effect of the facts and circumstances before it. We disagree.

 In Indiana, uncontroverted evidence is not necessarily binding on the trier of fact. It may be disbelieved and given no weight. *Gemmer v. Anthony Wayne Bank,* (1979) Ind.App., 391 N.E.2d 1185, *reh. den.* Ind.App., 393 N.E.2d 784, *trans. den.; Cohen v. Burns,* (1971) 149 Ind.App. 604, 274 N.E.2d 283; *Calvert v. London,* (1965) 137 Ind.App. 595, 210 N.E.2d 376. Furthermore, uncontradicted evidence will sometimes support conflicting inferences.

---

**4.** Maintenance for a spouse can be awarded only after the trial court makes a finding pursuant to Ind.Code 31–1–11.5–9(c) (Supp.1980) which states: "(c) The court may make no provision for maintenance except that when the court finds a spouse to be physically or mentally incapacitated to the extent that the

ability of such incapacitated spouse to support himself or herself is materially affected, the court may make provision for the maintenance of said spouse during any such incapacity, subject to further order of the court." *Temple v. Temple,* (1975) 164 Ind.App. 215, 328 N.E.2d 227, *trans. den.*

*A.S.C. Corp. v. First National Bank of El-wood,* (1960) 241 Ind. 19, 167 N.E.2d 460. When conflicting inferences may be drawn by the trier of fact from uncontradicted evidence, the inferences drawn by the trier of fact will prevail for we cannot substitute our judgment for that of the trier of fact. *Jones v. First National Bank, Adm.,* (1968) 143 Ind. App. 243, 239 N.E.2d 398. The only testimony in the record that Jacqueline is disabled and unable to work is Jacqueline's testimony which the trial court need not believe. Further, conflicting inferences about whether Jacqueline is unable to work could be drawn from the testimony of Jacqueline and her sister about Jacqueline's physical problem. Jacqueline's sister testified that Jacqueline's problem started in November of 1970, one month after their father died. Jacqueline had at that time what her sister called a nervous breakdown. Jacqueline stated that her problem with her legs was continuous; however, it became worse when she did any strenuous physical activity such as standing too long, scrubbing floors, and yard work. Although at times she was unable to go to the grocery store and drive her children to places where they needed to go, Jacqueline felt she is quite able to take care of her children and home. Considering the evidence in a light most favorable to the judgment, *Dorsey v. Dorsey,* (1980) Ind.App., 409 N.E.2d 1233, we cannot say the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences that might be drawn therefrom.

*Issue Five*

Jacqueline contends the trial court abused its discretion in ordering Melvin to pay support of fifty dollars ($50) per week per child. The main import of Jacqueline's contention is that in light of the fact she is not able to work and Melvin's income exceeded forty thousand dollars ($40,000) the trial court should have made a larger award of child support.

When determining the amount of child support, the trial court is to consider the following factors:

"(1) the financial resources of the custodial parent;

"(2) standard of living the child would have enjoyed had the marriage not been dissolved;

"(3) physical or mental condition of the child and his educational needs; and

"(4) financial resources and needs of the noncustodial parent."

IC 31-1-11.5-12(a) (Supp.1980). The precise determination of the amount of child support to be paid is a matter firmly committed to the discretion of the trial court. *Branstad v. Branstad,* (1980) Ind.App., 400 N.E.2d 167; *Eppley v. Eppley,* (1976) 168 Ind.App. 59, 341 N.E.2d 212. We will reverse the trial court's determination only upon a showing of an abuse of discretion.

■ The trial court did not consider Melvin's yearly income to be forty thousand dollars ($40,000), but rather his base salary of approximately twenty-five thousand five hundred dollars ($25,500). Further the trial court did not consider Jacqueline to be physically unable to work. In addition to ordering Melvin to pay fifty dollars ($50) per child per week, the trial court ordered him to pay the medical, dental, optical, and prescription expenses of the children and to maintain life insurance policies with his children designated as beneficiaries. Jacqueline was allowed to continue living in their home until the youngest child was twenty-one or became emancipated, and Melvin was ordered to pay one-half of the mortgage payments, taxes, and insurance payments. In light of the evidence adduced at the hearing, the trial court's support order does not constitute an abuse of discretion.

*Issue Six*

■ Jacqueline also challenges the division of property made by the trial court upon the basis of an abuse of discretion. When reviewing the trial court's action on appeal, we will neither weigh the evidence nor determine the credibility of the witnesses. *Geberin v. Geberin,* (1977) 172 Ind.App. 255, 360 N.E.2d 41. We will consider the

evidence only in the light most favorable to the judgment. *Dorsey v. Dorsey, supra.* An abuse of discretion will be found only if the trial court's judgment is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. *In re Marriage of Osborne,* (1977) Ind.App., 369 N.E.2d 653, *trans. den.*

When determining what is a. just and reasonable disposition of the marital property, the trial court must consider the following factors:

"(1) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

(2) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(3) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(4) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(5) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

Ind.Code 31–1–11.5–11 (Supp.1980). Jacqueline submits the statutory factors nos. (1), (2), and (4) have no unusual application under the facts of this case. However, she states the court's division of property is unreasonable in light of statutory factors nos. (3) and (5), contending on the one hand that Melvin earns over forty thousand dollars ($40,000) per year and on the other hand that she is unemployed and physically unable to work. Therefore, she posits, the court's division of property allegedly awarding Melvin fifty-six percent of the net assets and Jacqueline forty-four percent of the net assets is unreasonable. We disagree.

First, we note that contrary to Jacqueline's persistent assertions Melvin's income was not found to be over forty thousand dollars and Jacqueline was not found to be physically unable to work. As we discussed earlier, these findings by the trial court were not erroneous. Neither do we find the division of property to constitute an abuse of discretion by the trial court. We recognize that the basis of Jacqueline's contention that the trial court abused its discretion is that since she was not working she should have received a greater share of the marital property. However, we remind her that the fact that a different award might be fashioned under the same circumstances will not permit us to substitute our judgment for that of the trial court. *Tomlinson v. Tomlinson,* (1976) 170 Ind.App. 331, 352 N.E.2d 785, *trans. den.* In light of all the statutory factors, we find the trial court's determination is not unjust or unreasonable.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.