Marjorie L. DeMOSS,
Petitioner-Appellant,

v.

Robert R. DeMOSS,
Respondent-Appellee.

No. 2–982A296.

Court of Appeals of Indiana,
First District.

Sept. 21, 1983.

Michael J. Stapleton, Jeffrey J. Newell, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for petitioner-appellant.

Louis Pearlman, Jr., Edward Chosnek, Pearlman & Chosnek, Lafayette, for respondent-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Marjorie DeMoss appeals from a property settlement decree entered by the Tippecanoe Superior Court upon her petition for dissolution of marriage. We affirm and remand.

## FACTS

Marjorie and Robert DeMoss were married for over ten years at the time Marjorie filed her petition for dissolution on December 18, 1980. Shortly thereafter, Marjorie was granted a provisional order which required Robert to pay her $100 per week for her support and maintenance pending final dissolution of their marriage. Robert, however, became delinquent in his payments, and on October 30, 1981, the court ordered him to become current by paying the amount of $900. Robert complied with this order, but on November 3, 1981, filed a petition to modify the *pendente lite* order.

On March 11, 1982, the court entered its final decree wherein the marriage was dissolved and the couple's real and personal property was distributed. The court, however, failed to address in its decree Robert's petition to modify or either of Marjorie's two petitions to cite Robert for contempt upon his failure to make any payments after October 30.

In its distribution of property, the court awarded to Marjorie the couple's mobile home, a Dodge van, a lot in Florida, all furniture in her possession, and 232 silver dollars. The balance of the couple's property was awarded to Robert. This consisted of a 40 acre farm owned solely by Robert and another 40 acre farm owned jointly with his son Roger, two parcels of real estate, and various pieces of farm equipment.

## ISSUES

Marjorie has stated three issues in her brief. For purposes of clarity, we have rephrased them as follows:

1. Did the trial court abuse its discretion by the manner in which it distributed the couple's property?

2. Did the trial court err in failing to determine and state in its final decree whether Robert was liable for the support and maintenance payments between October 30, 1981, and the date of the final decree?

## DISCUSSION AND DECISION

*Issue One*

Essentially, Marjorie argues the trial court abused its discretion in two respects. First, she asserts that by her calculations she received only 7.8% of the net marital estate while Robert received the balance; clearly an abuse of discretion according to Marjorie. Additionally, Marjorie contends,

the trial court abused its discretion by including in its calculation of the couple's net estate an amount of debt incurred by Robert after their final separation.

 In fashioning its decree the trial court was guided by Indiana Code section 31–1–11.5–11 which requires the distribution of marital property to be made in a "just and reasonable manner." *Id.* At the appellate level, we review the trial court's property distribution only for an abuse of discretion. There is, however, a strong presumption the trial court complied with the statute, and we will reverse its judgment only where we find it to be clearly against the logic and effect of the evidence and reasonable inferences drawn therefrom. *Cunningham v. Cunningham,* (1982) Ind. App., 430 N.E.2d 809, 814. Furthermore, even though the evidence might justify a different result, we will not substitute our judgment for that of the trial court. *McBride v. McBride,* (1981) Ind.App., 427 N.E.2d 1148, 1151–52; *Morphew v. Morphew,* (1981) Ind.App., 419 N.E.2d 770, 778.

 Initially, we note the trial court made no specific findings in its decree as to the value of the assets or the amount of the couple's debt. Rather, it simply determined which assets belonged to Robert and Marjorie and divided the assets between them along with their debts. Thus, when Marjorie argues she received only 7.8% of the marital assets, she is relying upon valuations which were not necessarily utilized by the trial court. However, noting that we presume the trial court's distribution to be just and reasonable, we believe there is evidence in the record which indicates Marjorie received far more than 7.8% of the marital assets.

Midway through the trial, Robert and Marjorie submitted a list of marital assets along with corresponding values. The entire list consisted of over 70 items and will not be duplicated here. Essentially, it consisted of five different categories of assets which we will refer to as A, B, C, D, and E.

Category A contained all the items of personal property upon which the couple agreed to the issue of ownership, but disagreed over the value of the assets. Robert asserted the total value was only $129,450, while Marjorie contended their value was $188,840.

Regarding Category B, Robert alleged he owned these assets jointly with his son Roger, but Marjorie argued Robert was the sole owner. Again, the couple disagreed as the value of the assets. Robert claimed his one-half interest totalled $7,025, but Marjorie alleged the assets had a worth of $24,800.

Of the assets in Category C, Robert denied any interest whatsoever, claiming Roger was the sole owner. Marjorie, on the other hand, alleged Robert was the sole owner and appraised the value of the assets at $29,300.

Regarding Category D assets, Robert denied either he or his son owned them. Marjorie contended Robert was the sole owner and that the assets had a value of $10,500.

Category E assets consisted of two 40 acre farms, two lots in Florida, one lot in Arkansas, a Keough plan, and the proceeds from the couple's farming operations in 1980. Once again, they disagreed as to the value of the assets with Robert claiming a total value of $222,667, and Marjorie asserting a total worth of $245,407.

In its final decree the trial court determined that only the assets in Categories A and E were subject to distribution; that Category B assets were owned jointly by Robert and Roger; that Roger alone owned the assets in Category C; and that none of the parties owned the assets in Category D. Accordingly, if Robert's figures are used, the total value of the assets in Categories A and E is $352,117. If Marjorie's figures are utilized, the total worth is $434,247.

Also in dispute was the amount of the couple's debt. Robert argued it amounted to $414,848.93, but Marjorie contended it was only $294,184, as reflected in a financial statement submitted by Robert to a bank in January of 1981. However, Robert testified he had provided this lower figure to the bank in an effort to persuade it to

continue financing his farming operations. In any event, evidence of the couple's debt ranged between $414,848.93 and $294,184.

In light of these figures Marjorie contends the trial court abused its discretion when it awarded her assets with a net value—by her figures—of only $8,507. Indeed, if Marjorie's valuation and debt figures are utilized ($434,247 and $294,184 respectively), her share—$8,507 of a $140,063 net estate—does seem small. However, if Robert's valuation figure of $352,117 and debt figure of $414,848.93 are used, the net estate had a negative value. Thus, while Marjorie may have received only $8,507, Robert received nothing.

As stated previously, we presume the trial court has divided the property in a just and reasonable manner, and we will reverse its judgment only where we find it is clearly against the logic and effect of the evidence. Although the evidence was conflicting, we cannot conclude the trial court abused its discretion in the manner in which it divided the couple's assets and debts.

■ Marjorie next argues the trial court abused its discretion by including in its calculation of the couple's net estate an amount of debt incurred by Robert in his 1981 farming operations. According to Marjorie the trial court erroneously included this amount in computing the couple's net estate thereby reducing her share. We disagree.

As noted previously, the trial court made no specific findings as to the amount of the couple's debt. Thus, we are unable to determine whether or not the court considered the amount of the 1981 debt in making its distribution. And while the court charged Robert with this debt in its final decree, it does not follow that the court necessarily considered this amount in determining the couple's net estate, thereby reducing Marjorie's share. Moreover, when Robert attempted to testify as to the expenses incurred with respect to 1981 crops, Marjorie's objection was sustained. Record at 238–241. By so doing, we believe the trial court clearly indicated that the 1981 debt would *not* be considered. We find no abuse of discretion here either.

*Issue Two*

■ Marjorie's final contention concerns the trial court's failure to state in its final decree whether Robert was liable for the $100 per week support payments for the period of time between October 30, 1981, and March 11, 1982. Marjorie argues Robert should be held liable for these payments since the *pendente lite* order was neither revoked nor modified at any time prior to the entry of the final decree. We agree.

Pursuant to Indiana Code section 31–1–11.5–7(e),[1] provisional orders for support and maintenance may be revoked or modified at any time "prior to [the] final decree." *Id.* However, "when the final decree is entered," such orders are terminated automatically. *Id.*

In the present case, while Robert's petition to modify the support order was pending at the time the final decree was entered, the trial court made no ruling upon it. It must therefore be viewed as having been in effect until that time, when, by operation of the statute it terminated.

Despite the clear statutory language, Robert argues that because the final decree was silent regarding the *pendente lite* order, it must be viewed as having modified the order. Moreover, in Robert's view, it should be seen as having modified the order retroactively to November 3, 1981, thus relieving him of any further liability.

■ Indeed, as Robert concedes, there is no authority for this position. And while the duration of provisional support orders is committed to the sound discretion of the trial court, *In re Marriage of McDonald*, (1981) Ind.App., 415 N.E.2d 75, 79, *trans. denied; Wendorf v. Wendorf*, (1977) 174 Ind.App. 172, 173, 366 N.E.2d 703, 704; *Castor v. Castor*, (1975) 165 Ind.App. 520, 529, 333 N.E.2d 124, 130, there is no indication in the record that the trial court intended anything other than that its provisional order should terminate upon entry of the

1. For present law see Indiana Code section 31–1–11.5–7(f) (1983 Supp.).

final decree. Consequently, we remand this cause to the trial court so that it may amend its final decree to include an order directing Robert to pay the amount of support payments due Marjorie.

Affirmed and remanded.

ROBERTSON, P.J., and NEAL, J., concur.