SUPERIOR CONSTRUCTION COMPANY *v.* DAY.

[No. 18,882. Filed October 22, 1956. Rehearing denied November 15, 1956.]

*Albert H. Gavit,* of Gary, for appellant.

*P. L. O'Brien, David A. O'Brien,* and *O'Brien & O'Brien,* of Hammond, for appellee.

PFAFF, J.—While working for the appellant as a bricklayer's helper, the appellee fell from a scaffold twenty feet to the ground and was seriously injured. Upon his application for relief the hearing member of the Industrial Board awarded him compensation at the rate of $30.00 per week for 125 weeks upon a finding that his injuries had resulted in a whole man impairment of 25 percent. On review by the Full Board this award was increased to 200 weeks on the basis of a 40 percent impairment of the man as a whole.

It appears, without dispute, that immediately after the accident the appellee was taken to St. Margaret's Hospital in Hammond, Indiana, where he came under the observation of a Dr. Schlessinger at whose request Dr. Albin A. Jahns, an orthopedic surgeon, was called in to administer to the appellee's injuries. All hospital bills and the services of Drs. Schlessinger and Jahns were furnished and paid by the appellant. In preparation for the hearing of his application for compensation the appellee employed Dr. Joseph F. Carlo, who examined him as to his physical condition on May 10, November 11, and November 28, 1955.

On November 28, 1955, the appellee's application for compensation was submitted for trial before a single member of the Industrial Board and the appellee introduced his evidence and rested. The appellant was unprepared to go forward with its evidence because of the absence of its sole witness, Dr. Jahns, and it was ordered that Dr. Jahns' testimony be taken by deposition within ten days and, when transcribed, forwarded

to the secretary of the Board. Such deposition was taken on December 9, 1955, and after its completion but before its transcription the appellant, on the same day, prepared and filed with the Board a verified motion that it appoint a disinterested physician to examine the appellee and report his findings. The Hearing Member ignored this motion and on February 18, 1956, over two months after its filing and without ruling upon it, entered the award first above mentioned. Upon review the Full Board took no notice of this motion until it entered its final award when it was overruled simultaneously therewith.

Upon the above situation the appellant charges error in the following particulars: (a) Its motion for a disinterested physician should have been sustained; (b) in any event it had an absolute right to a ruling thereon during the progress of the case rather than after it was over; and (c) such treatment of the appellant demonstrates that it was not given a fair trial. In reference to contention (a), §40-1227, Burns' 1952 Replacement, provides for the examination of a claimant by a physician chosen by and at the expense of the employer and, also, the examination of said claimant by a physician of his own choosing and at his own expense. Each of such examinations was had before trial—for the appellant by Drs. Schlessinger and Jahns, and for the appellee by Dr. Carlo. §40-1227, *supra,* then provides as follows:

"The employer shall have no right to cause the employee to submit himself to additional medical examination at any time less than ten (10) days before the date his case is initially set for trial before the industrial board, except in cases which the initial hearing date is vacated on motion of the employee, or is vacated by the industrial board for good cause shown, and in such latter cases the employer shall have no right to cause the employee to submit himself to additional medical examination at any time less than ten (10)

days before the date on which such case is subsequently assigned for hearing. If the employer shall fail to have the employee examined before such time, he shall be deemed to have waived his right to request such examination, and such failure so to request examination shall not be considered as grounds for the continuance of the hearing."

It thus appears that the appellant's motion for a further examination of the appellee, filed on December 9, 1955, after the trial had ended, came too late and the appellant thereby waived all its rights thereto.

As to contention (b) we agree with the appellant most emphatically but see no reversible error involved for reasons hereinafter set out. Although the motion bore no merit the Board had no right to ignore it and we see no excuse for its refusal to rule upon it until after the trial of the case was over.

This brings us to a consideration of contention (c) in which the appellant asserts that the Board's failure to rule on its motion for the examination of the appellee by a disinterested physician foreclosed its opportunity for a fair trial. In this connection it says that had the Board ruled on said motion promptly, as was its duty to do, and such ruling was unfavorable, it could then have applied for leave to introduce additional evidence and could have produced competent men, who, although they had never seen the appellee, could read and interpret for the Board the various X-rays that were in evidence. This procedure the appellant says was completely thwarted through lack of a timely ruling on said motion. This does not appeal to us as a valid argument. In the first place the appellant's right to introduce additional evidence was in no way dependent on the ruling on said motion. Its right to do so lay in the discretion of the Board and

it could have sought such right regardless of the pending motion. In the second place the appellant's whole attitude seems to be predicated upon the assumption that if it had the findings of a disinterested physician as to the physical condition of the appellee it would need no further evidence, and that the testimony of X-ray experts it proposed to call, in the event said motion was denied, would be favorable to its defense. The testimony of Drs. Carlo and Jahns in reference to the appellee's present physical condition is in violent disagreement and we can only speculate as to what the findings of a disinterested physician would have been nor do we know how additional experts would have read the X-rays in evidence. The fairness of a trial cannot be judged by the assumption that available evidence not heard or its purport known would have altered the result. Finally, on this subject, it seems to us that the appellant was bound to know that it had waived its rights to an additional examination of the appellee, and the failure of the Board to act on a motion it knew was not well taken is no excuse for its failure to follow the procedure it now says it would have taken had said motion been ruled on promptly.

Next the appellant contends that there is no evidence in the record tending to prove that the appellee's injuries have impaired him in any degree as a whole man; that the only impairment shown by the evidence is in the use of his right leg. If such be the state of the evidence it must be conceded that the award here involved is contrary to law, as the legislature has provided a schedule of compensation for leg impairments and the Industrial Board cannot escape the limitations of such schedule through the device of a finding, without evidentiary support, of an impairment of the whole man. *J. W. Jackson Realty Co.* v. *Herzberger* (1942), 111 Ind. App. 432, 40 N. E. 2d 379; *Shaw* v. *Rosenthal*

(1942), 112 Ind. App. 468, 42 N. E. 2d 383; *Lauritzen* v. *United States Reduction Co.* (1922), 78 Ind. App. 293, 135 N. E. 390.

In determining the validity of this contention, it becomes necessary for us to examine the pertinent evidence and in doing so we are limited, by a long established principle, to a consideration of only that evidence which is most favorable to the award.

It appears that the appellee, while working for the appellant as a bricklayer's helper, fell from a scaffold 20 feet to the ground and was rendered unconscious. He was taken to St. Margaret's Hospital where he was examined by Dr. Albin A. Jahns, an orthopedic surgeon, who found that, as a result of such fall, he had sustained a fracture of the pelvis and a comminuted fracture of the surgical neck of the right femur. An open reduction of the fracture in the hip was performed and a Smith-Peterson nail used to transfix the fracture site. He became ambulatory shortly thereafter and three weeks after surgery he was discharged from the hospital, after having been confined therein for a total of five weeks. While there he vomited blood on occasions and on the date his claim was heard by the Industrial Board, approximately a year and eight months after his accident, he could eat only soup, milk and oatmeal. At this time he was still vomiting occasionally with no blood involved. On May 10, November 11, and November 28, 1955, the appellee was examined by Dr. Joseph F. Carlo, who testified at the trial that as a result of such examination he found a comminuted fracture of the superior and inferior rami of the right pelvis which, in the process of healing, had resulted in a definite deformity of the pelvis as a whole.

We think it clear from the above evidence that the appellee suffered multiple injuries from a single acci-

dent—one, a fractured femur in his right leg, and the second, a fractured pelvis. The femur fracture has resulted in a ⅜ of an inch shortening of his right leg, a loss of 40 percent abductive use thereof, and a loss of 25 percent of its lifting power. The pelvic fracture, according to the testimony of Dr. Carlo, prevents the appellee from doing any heavy lifting, climbing or bending in the pelvic area, which, in turn, has and will cause a certain amount of permanent atrophy of the back and interior abdominal muscles. Also, the normal functions of the stomach have been impaired to the extent that he vomits frequently and is unable to eat anything but soup, milk and oatmeal.

Sec. 40-1303, Burns' 1952 Replacement, provides that in all cases of permanent partial impairment, not specifically covered by the schedule of compensation for the various injuries therein described, compensation proportionate to the degree of such permanent partial impairment, in the discretion of the Industrial Board, not to exceed 500 weeks, shall be allowed. This section of the Workmen's Compensation Act has been construed to mean that when multiple injuries are suffered, the amount of compensation should not be reached by adding together the amounts for each injury as specified in the schedule but upon the basis of the percentage of total impairment to his person as a whole. *Trustees of Indiana University* v. *Rush* (1934), 99 Ind. App. 203, 192 N. E. 111; *Lauritzen* v. *United States Reduction Co., supra;* Small's Workmen's Compensation Law of Indiana, Par. 9.5, p. 247, and cases cited.

Sec. 40-1303, *supra,* provides no specific schedule of compensation for injuries to the pelvis with attendant loss of back and abdominal muscle function as is present in the instant case, but even if it did, in view of the leg injuries compensation, under the above authorities,

would have to be determined on the basis of the appellee's impairment as a whole man. This the Industrial Board did and the award is affirmed, with statutory interest.

Kendall, C. J., Crumpacker, P. J., Bowen, Royse, JJ. concur; Kelley, J. not participating.

NOTE.—Reported in 137 N. E. 2d 543.