**COACHMEN INDUSTRIES, INC.,**
**Appellant (Defendant Below),**

v.

**Joe L. YODER, Appellee (Plaintiff Below).**

No. 2–1179A357.

Court of Appeals of Indiana,
Second District.

June 29, 1981.

Robert T. Sanders, III, Byron & Daniels, Elkhart, for appellant.

Edgar A. Grimm, Grimm & Grimm, Auburn, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Coachmen Industries, Inc. (Coachmen) appeals from an award by the Full Industrial Board of Indiana (Board) to plaintiff-appellant Joe L. Yoder (Yoder), contending that Yoder's claim is barred by the untimely filing of his application; that the Board's finding of 25% permanent partial impairment is not supported by the evidence; and that the Board's finding of bad faith and dilatory conduct in the course of settlement negotiations is not supported by the evidence.

We affirm in part and reverse in part.

## FACTS

This case is ready for decision on the merits after having been remanded to the Board for further findings.

The relevant facts leading to the present appeal are:

Yoder was injured in a truck accident while in the course of his employment for Coachmen, receiving injuries to his neck, eye, ear, nose, and arm. At the time of the accident, May 14, 1974, Yoder was earning an average weekly wage in excess of the maximum amount used in computing benefits under the Workmen's Compensation Act.[1] A Form 12 Agreement providing for temporary total disability payments was entered into by Yoder and Coachmen, and approved by the Board soon after the accident. This agreement provided for temporary total disability payments at the rate of $75 per week, but Coachmen only made payments for 62 weeks ($4,650 total)—until about July 22, 1975—and refused to make payments thereafter.

Coachmen offered no explanation for the discontinuance of these payments. The agreement had not provided for a fixed termination date, the statutory maximum in payments had not been exceeded, the parties had not agreed to terminate payments, and the Board had not approved any discontinuance of payments under the Form 12 Agreement.

Frustrated in his efforts to deal with Coachmen, Yoder contacted attorney Edgar Grimm (Grimm) for assistance. On September 3, 1975, Grimm wrote to Coachmen's insurance carrier, Commercial Union Assurance Company (Commercial), seeking copies of Yoder's medical reports in Commercial's file.

A Mrs. Eby (Eby) replied in the name of Commercial, requesting that release forms be signed by Yoder so medical reports could be sent to Grimm. After Grimm had returned the completed forms to Eby, she sent on October 13th what she claimed were all reports in Commercial's file, and wrote on October 31st that a total evaluation of Yoder's medical condition would be necessary.

1. Ind.Code § 22–3–1–1 et seq. (1976 & Supp. 1980).

Other medical reports were later sent to Grimm from Eby. In particular, one evaluation by Dr. Ralph Ganser, received on November 13th, rated the injury to Yoder's right ear at 50% permanent partial impairment. Whether these reports received after October 31st were on file when Eby said that all reports in Commercial's file had been sent to Grimm is unclear from the record.

Grimm again wrote to Eby on April 2, 1976, expressing his belief that Yoder's injuries probably had reached a permanent, quiescent state, and indicating his desire to settle the claim. The next significant correspondence was a letter from Eby inquiring why Yoder had not kept a June 14, 1976 appointment with Dr. Martin Feferman, who was to have made a total evaluation of Yoder's condition.

Although Grimm twice replied that Yoder had kept the appointment, Eby did not respond to his letters. After much fruitless correspondence, Grimm finally obtained in December, 1976 a copy of the report from Dr. Feferman, who asserted that the report had been sent to Eby on August 11, 1976.

Grimm immediately wrote to Eby. Emphasizing that Dr. Feferman had rated Yoder's permanent partial impairment at approximately 20% (10% impairment to the body as a whole because of his neck injury, plus at least 10% due to his eye and head injuries) and that Dr. Ganser had found a 50% impairment to the right ear, Grimm demanded permanent partial impairment benefits.

Commercial refused any payments for impairment, so Yoder filed on December 30, 1976 a Form 14 Application for Review of Award on Account of Change in Condition (Form 14 Application). A Single Hearing Judge of the Board entered an award for 25% permanent partial impairment to the body as a whole, plus costs, medical expenses, attorney's fees, and $150 for additional attorney's fees based on Coachmen's bad faith and dilatory conduct (through Commercial) in settling the claim. Omitting formal parts, the Single Hearing Judge's entry reads:

## STIPULATION

The parties stipulated that on or about May 14, 1974, the plaintiff was employed by defendant at an average weekly wage in excess of the then prevailing statutory maximum. It was further stipulated that on said date the plaintiff received personal injury by accident arising out of and in the course of his employment and that pursuant to a Form 12 Agreement plaintiff was paid 62 weeks of temporary total disability at the rate of $75.00 per week. It was further stipulated that plaintiff paid $5,160.94 in statutory medical expense; that defendant had notice of the accident, and that Dr. Ganser had rated plaintiff as having a 50% loss of hearing of his right ear.

## ISSUES

Issues to be determined by the Board are:

1. Permanent partial impairment, if any.

2. A medical bill from Dr. Busis and travel expense to visit said doctor.

3. Defendant's bad faith in settling or adjusting the claim.

4. Defendant's affirmative defense [untimely filing].

## SUMMARY OF EVIDENCE

Plaintiff, Joe L. Yoder, testified as to the details concerning his accident and the treatments after his accident. He testified as to his visits to Dr. Busis, and that his last visit produced an office expense of $50.00 as well as 720 miles travel in visiting Dr. Busis.

Edgar Grimm testified in narrative form as to the course of his handling of the case, and in particular that in November of 1975 he received a letter from the insurance company indicating that Dr. Ganser had rated the plaintiff as having a 50% permanent partial impairment of the hearing of his right ear.

Martin Feferman testified in person as to his examinations of plaintiff and his estimates as to permanent partial impairment. Martin Feferman also testified by deposition that he was a neurosurgeon and examined plaintiff first on June 14, 1976, and as to the results of his examination. He further testified as to certain reactions of the plaintiff which he described as being emotional reactions, and indicated that he would rate plaintiff as having a 10 to 15% permanent partial impairment of the body as a whole for all of his symptoms.

On cross-examination he indicated that his impairment evaluation did not include a component for hearing loss.

### FINDINGS

Said Hearing Judge, having heard all the evidence in said cause, the stipulation of the parties, and having reviewed the entire file and being duly advised in the premises therein, now adopts the stipulation as the Board's findings.

It is further found that Defendant's Affirmative Defense should be and hereby is overruled.

It is further found that the bill of Sidney Busis in the amount of $50.00 constitutes statutory medical expense and the same should be paid by the defendant, and further plaintiff should be paid for his travel expense for 720 miles at the then applicable rate.

It is further found that plaintiff has suffered a 25% permanent partial impairment to the body as a whole.

It is further found that defendant was in possession of a medical report which indicated a 50% permanent partial impairment of plaintiff's hearing in his right ear, and failed to offer plaintiff benefits for permanent partial impairment based on said rating.

It is further found that this action constitutes bad faith and lack of due diligence on the part of the defendant, and that plaintiff's attorney, Edgar A. Grimm, should be entitled to attorney's fees on account of said bad faith but that the amount of said attorney's fees fixed and awarded on account of lack of diligence or because of bad faith is limited to the sum of $150.00.

It is further found that plaintiff's attorney, Edgar A. Grimm, shall be entitled to the attorney's fee based on the schedule hereinafter set out with the exception that the $150.00 previously referred to shall not be charged against the Award of the plaintiff herein.

### AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Industrial Board of Indiana that there be awarded to plaintiff as against the defendant 125 weeks of compensation at the rate of $60.00 per week for his 25% permanent partial impairment of the body as a whole less 36 weeks at the rate of $75.00 per week which is the number of weeks temporary total disability was paid in excess of the statutory 26 weeks.

IT IS FURTHER ORDERED that defendant pay the bill of Dr. Sidney Busis in the amount of $50.00, and reimburse plaintiff for travel expense for 720 miles at the then applicable rate.

IT IS FURTHER ORDERED that all payments of compensation shall be brought up to date, paid in cash and in a lump sum.

IT IS FURTHER ORDERED that defendant shall pay the costs, if any, assessed in this cause.

IT IS FURTHER ORDERED that all monies payable by this Award shall be paid direct to plaintiff except as hereinafter ordered paid to plaintiff's attorney.

IT IS FURTHER ORDERED that attorney fees shall be paid as follows: a minimum fee of $50.00; and 20% upon the first $5,000 recovered; 15% upon the second $5,000 recovered, and 10% upon all recovery in excess of $10,000; said fees to be paid by the defendant direct to plaintiff's attorney, Edgar A. Grimm, with credit to defendant against compensation herein awarded plaintiff for all sums paid

out as attorney fees in accordance with this Award except for the sum of $150.00 previously referred to as attorney's fees on account of defendant's bad faith and lack of due diligence.

Record at 172–73. The award and findings were adopted by the Full Industrial Board on September 12, 1979.

## ADDITIONAL FINDINGS

Thereafter Coachmen appealed and we remanded the case to the Board for sufficient findings of fact as to whether the claim was timely filed, specifically as to whether the impairment is a direct or indirect result of the 1974 accident. Complying with our order, the Board on December 17, 1980 obligingly certified these special findings of facts and conclusions of law:

It is further found that at the time of the stipulated industrial accident plaintiff received certain trauma to his body as a result of said accident, including lacerations and fractures.

It is further found that at the time of said accident neither plaintiff nor any person, medical or otherwise, could speculate as to whether plaintiff's condition would completely and totally resolve so that there would be no permanent partial impairment or whether there would be a certain percentage of permanent partial impairment when plaintiff's injuries reached a permanent and quiescent state.

It is further found that plaintiff is not being compensated for a so-called scheduled injury i. e. the loss by amputation, and thus plaintiff was not in a position to ascertain his *permanent* partial impairment until a point in time after his temporary total disability ceased.

It is further concluded that Dr. Fefferman's [*sic*] reference to plaintiff's impairment being "directly caused by his accident" was a reference that his present condition flowed from the accident as a natural consequence and was not an indication that his impairment was a so-called "direct harm" under some older Workmen's Compensation cases.

It is further found that plaintiff's permanent impairment did not immediately arise from the accident and exist latently with his temporary total disability but that in fact it later developed as a result of the initial harm.

It is further found that defendant has failed to show by sufficient credible evidence that plaintiff's injury constituted a direct harm within the meaning of the cases.

Again we found the Board's findings to be insufficient as to the awarding of additional attorney's fees and ordered the Board to make additional findings on this issue. The Board complied with our order by submitting the following on May 28, 1981:

It is further found that at the time of the hearing the defendant stipulated that the plaintiff had suffered a 50% permanent partial impairment to his right ear.

It is further found that the defendant had been in possession of the report of a 50% permanent partial impairment of the right ear since prior to November 13, 1975, and that the defendant refused to affirmatively offer plaintiff benefits based on said impairment rating even though defendant did not dispute the rating for said hearing loss given to the plaintiff.

It is further concluded that if a defendant is in possession of a rating for permanent partial impairment and does not in good faith dispute said rating, the defendant should affirmatively offer plaintiff the benefits based on said rating, and that the failure to do so constitutes bad faith and lack of due diligence in settling a claim.

## ISSUES

1. Is Yoder's claim barred due to the untimely filing of his application?

2. Is the award for 25% permanent partial impairment to the body as a whole supported by the evidence?

3. Is the award of additional attorney's fees for bad faith and dilatory conduct in settling Yoder's claim supported by the evidence?

## DECISION

*ISSUE ONE*—Untimely Filing—

Is Yoder's claim barred due to the untimely filing of his application?

*PARTIES' CONTENTIONS*—Coachmen asserts that the only evidence presented at the hearing shows the permanent partial impairment for which benefits are now sought was a direct result of the 1974 accident. Yoder's claim therefore was untimely under Ind.Code § 22–3–3–3 (1976), which requires that the claim be filed within two years of the accident.

Yoder responds that his present claim is a modification of the earlier Form 12 Agreement, which provided for temporary total disability payments. Differently stated, the permanent partial impairment is an indirect result of the 1974 accident. IC § 22–3–3–27 (1976) would thus apply, requiring only that his claim be filed within two years from the last date payments were made under the Form 12 Agreement.

*CONCLUSION*—Yoder's claim was timely filed.

In resolving this dispute, our standard of review is circumscribed. The Workmen's Compensation Act is liberally construed in favor of the employee. *Frampton v. Central Indiana Gas Co.*, (1973) 260 Ind. 249, 297 N.E.2d 425; *Duncan v. George Moser Leather Co.*, (1980) Ind.App., 408 N.E.2d 1332; *Sam Winer & Co. v. Spelts*, (1976) Ind.App., 348 N.E.2d 670. The Board's findings of fact are conclusive. IC § 22–3–4–8 (1976); § 22–4–17–12; *Allen v. United Telephone Co.*, (1976) Ind.App., 345 N.E.2d 261; *Rivera v. Simmons*, (1975) Ind.App., 329 N.E.2d 39; *Bohn Aluminum & Brass Co. v. Kinney*, (1974) Ind.App., 314 N.E.2d 780. By "conclusive" we mean that this court does not weigh the evidence— only if reasonable men would be bound to reach the opposite conclusion from evidence in the record may the decision of the Board be reversed. Affirmance is required when the evidence is conflicting because only evidence favorable to the Board may be considered. *Blue Ribbon Pie Kitchens, Inc. v. Long*, (1952) 230 Ind. 257, 103 N.E.2d 205; *Bohn Aluminum & Brass Co. v. Kinney,*

*supra.* So if the evidence supports the award, we affirm. *Penn-Dixie Corp. v. Savage*, (1979) Ind.App., 390 N.E.2d 203; *Hilltop Concrete Co. v. Roach*, (1977) Ind. App., 366 N.E.2d 218.

With these principles in mind, we consider Coachmen's claim of reversible error. Two primary sections in the Workmen's Compensation Act govern the limitation of claims. IC § 22–3–3–3, the statute which Coachmen says applies, provides in part:

> *The right to compensation* under this act shall be forever *barred unless within two (2) years after the occurrence of the accident,* or if death results therefrom, . . . after such death, *a claim for compensation thereunder shall be filed* . . . . (Emphasis added)

Yoder was injured in an accident which occurred in May of 1974, and filed his Form 14 Application for permanent partial impairment in December of 1976, over two years after the accident occurred.

Yoder says IC § 22–3–3–27 applies. That statute provides in part:

> The *power and jurisdiction of the industrial board over each case shall be continuing and* from time to time, *it may,* upon its own motion or upon the application of either party, *on account of a change in conditions, make such modification or change in the award,* ending, lessening, continuing or extending the payments previously awarded, either by agreement or upon hearing, *as it may deem just, subject to the maximum and minimum provided for in this act.*
>
> . . . .
>
> The *board shall not make any such modification* upon its own motion, nor shall any application therefor be filed by either party *after the expiration of two (2) years from the last day for which compensation was paid under the original award made either by agreement or upon hearing,* except that applications for increased permanent partial impairment are barred unless filed within one (1) year from the last day for which compensation was paid. The board may at any time

correct any clerical error in any finding of award. (Emphasis added).

Coachmen made temporary total disability payments pursuant to the Form 12 Agreement until July 1975. Yoder filed his Form 14 Application for permanent partial impairment in December 1976, less than two years after the final payment under the Form 12 Agreement,[2] thus his reliance on IC § 22–3–3–27.

These two statutes were explained in *Pettiford v. United Department Stores*, (1935) 100 Ind.App. 471, 196 N.E. 342:

> If an impairment . . . occurs at the time of the accident, and if the award of compensation is based upon disability alone then it is obvious that a right of action still lies for the impairment, which may be prosecuted at any time within 2 years after the accident [under IC 22–3–3–3] . . . . If, however, the impairment does not directly flow from the accident but is resultant at a later time, then if there be an award for the disability the cause of action for the resultant impairment must be commenced within one year [now two years] from the termination of the period of disability as fixed in the award for the reason that [IC 22–3–3–27] controls as to the time to bring such action. Such resultant impairment in the case last supposed amounts to a *change of conditions* as contemplated in [IC 22–3–3–27].

*Id.* at 479, 196 N.E. at 345 (emphasis added).

In *Pettiford* the Board had determined " 'that sufficient time had not elapsed to determine the permanent partial impairment if any plaintiff (appellant) had sustained as a result of the accidental injury . . . .' " *Id.* at 476, 196 N.E.2d at 344. The Board therefore was held to have been correct in concluding that IC § 22–3–3–27 was the applicable statute, because the permanency of the injuries was incapable of determination at the time of the accident; the injury was resultant, not direct.

2. Yoder contends that July 1975 may not be considered as the date of final payment under the Form 12 Agreement because Coachmen had a duty to pay after July 1975. Assuming

A like result was reached in *Tom's Chevrolet v. Curtis*, (1958) 128 Ind.App. 201, 147 N.E.2d 571, in which the claimant's condition had *improved* since the initial injury but no physician could determine whether the degree of impairment had reached its maximum until after the time for filing under IC § 22–3–3–3 had elapsed. Although the injuries were present at the time of the accident, whether the impairment was permanent could not be ascertained until after the time of accident. A modification of the original award was thus proper under IC § 22–3–3–27 as a change in condition.

■ So it is with Yoder's injuries, and Coachmen may not take solace in Dr. Feferman's statement that Yoder's impairment is a direct result of the 1974 accident. The Board interpreted his remark to mean that the 1974 accident caused the impairment in the sense that the impairment was a result or consequence of the accident, but not that the impairment was a direct harm of the accident. To so interpret Dr. Feferman's remarks was within the Board's province. *Kenwood Erection Co. v. Cowsert* (1953) 124 Ind.App. 165, 115 N.E.2d 507 (Board interpreted physician's use of "disability" to mean "impairment" as a legal term).

The Board's interpretation is buttressed by other testimony of Dr. Feferman indicating that the impairment was resultant, not direct.

Q. At the time you saw him did you then consider his condition to be permanent and quiescent?

A. No, I thought it could be improved.

*Record* at 210.

Q. When you first saw him on June 14, 1976, did you consider then that all of his problems resulting from his involvement in the automobile collision had become quiescent in the sense that they probably wouldn't get any better—

that Yoder is correct, it would not change the result here because the Form 14 application was filed within two years of July 1975.

A. No. I thought he could improve. I didn't think his eye would change. I didn't think his facial factor would change, but I thought he could improve his neck considerably and his arms and his back—

Q. But that didn't work out, did it?

A. He didn't do it.

Q. Do you sometimes find that patients for various reasons—maybe valid to them and—

A. I don't know what the reasons are. I find it—

Q. Sometimes they don't improve?

A. Yes. I think that there are many factors that enter into that, but I think that's true.

*Id.* at 317–18.

At most Dr. Feferman's testimony was conflicting. We do not weigh conflicting testimony; we consider only the evidence in favor of the Board's award. *Blue Ribbon Pie Kitchens, Inc. v. Long, supra; Bohn Aluminum & Brass Co. v. Kinney, supra.* And evidence in favor of the award supports the Board's finding that the impairment is an indirect result of the 1974 injury.

Cases cited by Coachmen are not inconsistent with our holding. In *Carnegie v. Illinois Steel Corp. v. Klahn,* (1945) 115 Ind. App. 527, 60 N.E.2d 296, the impairment was held to be directly caused from the accident, but absolutely no evidence supported the Board's finding that the injuries were not permanent and quiescent at the time of the accident. And in *Fashion Thimble Shoe Co. v. Withrow,* (1942) 110 Ind. App. 668, 40 N.E.2d 359, evidence supported the Board's finding that the injury was directly caused; for example, x-rays showed the injury was present at the time of the accident. *Accord, Bicknell Coal Co.*

*v. Slater,* (1947) 114 Ind.App. 141, 50 N.E.2d 881 (Board's finding of direct causation affirmed).

The differing results in these cases merely reflects the deference owed to the Board's conclusion when there is evidence in the record to support its finding. Evidence in the record supports the Board's finding that Yoder's injury was an indirect result of the 1974 accident, so his claim was timely filed under IC § 22–3–3–27.

*ISSUE TWO*—Degree of Impairment

Is the award of 25% permanent partial impairment to the body as a whole supported by the evidence?

*PARTIES' CONTENTIONS*—Coachmen claims that the award of 25% permanent partial impairment (at $60 per week for 125 weeks, or $7,500)[3] is not supported by the evidence because the only admissible evidence was that of Dr. Feferman, who concluded that Yoder suffered from a 10% to 15% permanent partial impairment to the body as a whole (excluding a component for any hearing loss), and that of Dr. Ganser, who determined that Yoder's right ear was impaired by 50% (Dr. Ganser made no evaluation for impairment to the body as a whole). IC § 22–3–3–10(b)(5) (1976), Coachmen says, would permit the Board to award a maximum of 37½ weeks of compensation[4] for the hearing impairment and *id.* § 22–3–3–10(b)(6) would permit a maximum award of 75 weeks of compensation for the impairment to the body as a whole,[5] so Yoder was entitled to a maximum of 112½ weeks of compensation.[6] The Board thus erred in awarding 125 weeks of compensation.[7]

Yoder counters that Dr. Feferman's evaluation of 10% to 15% permanent partial impairment did not include a component for hearing loss. The Board is permitted to

---

**3.** Yoder was awarded $60.00 per week for 125 weeks, or $7,500, which amount was reduced by a credit owed to Coachmen for the amount paid in temporary total disability benefits exceeding 26 weeks. Because Coachmen had paid 62 weeks of temporary total disability payments at $75 per week, a 36 week credit would come to $2,700. The net award to Yoder for permanent partial impairment was thus

$4,800 ($7,500 minus $2,700). *See* I.C. § 22–3–3–10(b) (1976).

**4.** 50% of 75.

**5.** 15% of 500.

**6.** 37½ plus 75.

**7.** 25% of 500.

combine the impairment for the hearing loss with the other impairments to the body as a whole in reaching the 25% permanent partial impairment rating to the body as a whole. Further, Yoder's testimony that he suffered from 75% to 80% permanent partial impairment would support the Board's finding.

CONCLUSION—The Board's award of 25% permanent partial impairment to the body as a whole is supported by the evidence.

Dr. Feferman determined from his first examination of Yoder that he suffered a 20% permanent partial impairment to the body as a whole. On Dr. Feferman's second examination, he discovered a 10% to 15% permanent partial impairment to the body as a whole.

■ Yoder testified that his permanent partial impairment was from 75% to 80%. Accurate is Coachmen's assertion, however, that a claimant may not testify to the *permanency* of his impairment, an evaluation which calls for the opinion of an expert. *Kenwood Erection Co. v. Cowsert, supra*; B. Small, Workmen's Compensation Law of Indiana § 12.6, at 141 (Supp.1976).

■ But Coachmen's assertion is correct only as far as it goes, for a claimant may testify to the *degree* of impairment. The reason is a claimant has personal knowledge and experience by which to determine the loss of use, even if temporary, of his bodily functions. *Hilltop Concrete Corp. v. Roach, supra; McKeehan v. Aluminum Co. of America*, (1969) 145 Ind.App. 319, 250 N.E.2d 761; B. Small, *supra.*

The Board therefore was charged with weighing the conflicting testimony of Dr. Feferman and Yoder, at least as to the degree of impairment. This the Board did and found impairment to be at 25%.

But was the impairment permanent? Dr. Feferman indicated that the impairment from which Yoder suffered was permanent—that the injuries had reached a permanent and quiescent state. The Board thus had before it evidence from which it could infer that Yoder suffered from impairment to the body as a whole of at least

25%, and that the impairment was permanent.

■ The Board's finding may be supported on yet another ground. The Board combined Dr. Ganser's evaluation of a 50% impairment to the right ear with Dr. Feferman's evaluation of 10% to 15% impairment to the body as a whole in reaching the 25% impairment rating to the body as a whole. IC § 22–3–3–10(b) sets out maximum awards for specific types of permanent partial impairment. One of these scheduled benefits is in *id.* § 22–3–3–10(b)(5), which provides for partial hearing loss. Another is for "all other cases of permanent partial impairment." *Id.* § 22–3–3–10(b)(6). When a claimant suffers from multiple injuries, the Board acts properly in awarding compensation for impairment to the body as a whole under section 22–3–3–10(b)(6). *Superior Construction Co. v. Day*, (1956) 127 Ind.App. 84, 137 N.E.2d 543; *Trustees of Indiana University v. Rush*, (1934) 99 Ind. App. 203, 192 N.E.2d 111; B. Small, *supra*, § 9.7.

■ Yoder suffered injuries to the neck, eye, nose, ear and arm; hence, the award for impairment to the body as a whole under section 22–3–3–10(b)(6) was proper. We conclude that the Board's finding and award of 25% permanent partial impairment to the body as a whole is supported by the evidence because "the amount of compensation awarded was within the limits of the section applied and the choice of that particular section of the Act was within the bounds of the Board's discretion as controlled by the facts presented at the hearing." *Hilltop Concrete Corp. v. Roach, supra*, at 224.

*ISSUE THREE—*

Is the award of additional attorney's fees for bad faith and dilatory conduct in settling Yoder's claim supported by the evidence?

*PARTIES' CONTENTIONS*—Coachmen interprets the Board's "Findings" to say that the finding of bad faith and lack of due diligence was based only on Coachmen's

failure to offer Yoder permanent partial impairment benefits when it had in its possession Dr. Ganser's report which rated the impairment to Yoder's right ear at 50%. The Board could not logically find any bad faith or dilatory conduct in Coachmen's refusal to offer Yoder benefits because Coachmen had already paid Yoder all he was entitled to for a 50% permanent impairment to his right ear. IC § 22–3–3–10(b)(5) would permit the Board to award $2,250 for the hearing loss (37½ weeks times $60), reduced by the amount which already had been paid in excess of 26 weeks for temporary total disability payments, or $2,700 (62 weeks of temporary total disability payments at $75 per week, less 26 weeks equals 36 weeks at $75 per week). The credit to which Coachmen was entitled for temporary total disability payments in excess of 26 weeks ($2,700), was greater than the amount which would be owed for the hearing loss ($2,250), so the Board's finding of bad faith and dilatory conduct in Coachmen's refusal to offer benefits for the hearing loss is illogical. Moreover, Coachmen avers that an employer cannot be forced to offer benefits on a piecemeal basis. An employer has the right to contest any evaluation before the Board and cannot be found to have acted in bad faith or in a dilatory manner until after a claimant seeks to enforce an award made by the Board.

Yoder responds that Coachmen has read the Board's findings of fact too narrowly. The Board based its finding of bad faith and dilatory conduct not only upon Coachmen's refusal to offer permanent partial impairment benefits while it had Dr. Ganser's report, but also upon evidence which showed that Coachmen had discontinued temporary total disability payments without justification, had refused to make payment when it had reason to believe that Yoder had suffered at least a 10% to 15% permanent partial impairment to the body as a whole, and had generally acted to delay settlement of Yoder's claim.

*CONCLUSION*—The award of additional attorney's fees for bad faith or dilatory conduct in settling Yoder's claim is not supported by the evidence.

The statute which provides for additional attorney's fees for bad faith or failure to pursue settlement with diligence, IC § 22–3–4–12 (1976), reads:

The fees of attorneys and physicians and charges of nurses and hospitals for services under this act [22–3–2–1—22–3–6–3] shall be subject to the approval of the industrial board. When any claimant for compensation is represented by an attorney in the prosecution of his claim, the industrial board shall fix and state in the award, if compensation be awarded, the amount of the Claimant's attorney's fees. The fee so fixed shall be binding upon both the claimant and his attorney, and the employer shall pay to the attorney out of the award, the fee so fixed and the receipt of the attorney therefor shall fully acquit the employer for an equal portion of the award; Provided, That *whenever the industrial board shall determine upon hearing of a claim that the employer has acted in bad faith in adjusting and settling said award, or whenever the industrial board shall determine upon hearing of a claim that the employer has not pursued the settlement of said claim with diligence, then the board shall, if compensation be awarded, fix the amount of the claimant's attorneys fees and such attorney fees shall be paid to the attorney and shall not be charged against the award to the claimant. It is further provided that such fees as are fixed and awarded on account of a lack of diligence or because of bad faith on the part of the employer shall not be less than one hundred fifty dollars [$150].* The industrial board may withhold the approval of the fees of the attending physician in any case until he shall file (a) report with the industrial board on the form prescribed by such board. (emphasis supplied)

This statute contains no hint of a requirement that an employer offer benefits on a piecemeal basis but does demand good faith and diligence by an employer in processing a claimant's claim for benefits.

The relevant portion of this statute has been construed in four cases. In three of

those cases, the court on appeal affirmed the Board's conclusion that no bad faith or lack of due diligence existed. From the evidence most favorable to the Board's decision, it appeared that the parties had merely disagreed after a good faith effort to settle the claim. The deference owed to the Board's conclusion that no bad faith or lack of due diligence existed was thus honored when the conclusion was supported by the findings. *See Dennison v. Martin, Inc.*, (1979) Ind.App., 395 N.E.2d 826; *Allen v. United Telephone Co.*, (1976) Ind.App., 345 N.E.2d 261; *Smith v. Graver Tank & Manufacturing Co.*, (1973) Ind.App., 302 N.E.2d 852.

In the fourth case, *EFP Corp. v. Pindill*, (1980) Ind.App., 413 N.E.2d 279, the plaintiff-appellee apparently sought to invoke section 22–3–4–12 for the first time on appeal. The appellate court refused to order additional attorney's fees, saying that

> [a]part from this appeal, Pendill has not alleged any facts indicating dilatory action or bad faith by E. F. P., and we do not think E. F. P.'s pursuit of a rightful appeal, without more, warrants punitive fees.

*Id.* at 281.

■ Although the original findings may have been ambiguous, the additional findings leave no doubt that the Board's conclusion that Coachmen acted with bad faith or lack of due diligence was based on one ground only: Coachmen's failure to offer benefits when it was in possession of an undisputed report indicating that Yoder suffered from a 50% permanent partial impairment to the right ear. Unfortunately, that finding alone cannot support the Board's conclusion. From this finding it can only be surmised that a good faith dispute existed at *most*, but not a bad faith dispute.

Without deciding whether Coachmen is required by statute to offer benefits based upon an uncontested impairment report, it is clear that Coachmen would owe no further benefits to Yoder for the hearing loss *after deducting the credit* for temporary total disability payments which already had

been made in excess of 26 weeks. Consequently, Coachmen disputed Yoder's claim for benefits.

Because the Board's conclusion of law—that Coachmen acted with bad faith or lack of due diligence—is not supported by its findings, we must reverse the award of additional attorney's fees. *DeMichaeli & Associates v. Sanders*, (1976) Ind.App., 340 N.E.2d 796. In all other respects the Board's award is affirmed.

SHIELDS, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

The Board did not aid our decision when, in The Additional Findings of December 17, 1980, it found that Coachmen "failed to show by sufficient credible evidence that [Yoder's] injury constituted a direct harm. . . ." Such finding was obviously premised upon an erroneous assumption that it was Coachmen's burden to prove that Yoder's impairment was direct and that therefore I.C. 22–3–3–3 was the applicable statute. To the contrary, it was Yoder's burden to prove that his impairment was resultant rather than direct. *Railway Express Agency v. Harrington* (1949) 119 Ind.App. 593, 88 N.E.2d 175. Despite the unnecessary finding, however, the Board did find the affirmative fact that Yoder's impairment was "later developed," i. e., resultant.

At first blush, *Tom's Chevrolet Sales v. Curtis* (1958) 128 Ind.App. 201, 147 N.E.2d 571 would appear to support a conclusion that Yoder's modification claim is not barred by I.C. 22–3–3–3. The *Curtis* case holds that an existing permanent impairment is within the purview of I.C. 22–3–3–27 so long as it has not reached a quiescent state at the time of the original award. The holding however is not justified by *Fashion Thimble Shoe Co. v. Withrow* (1942) 110 Ind.App. 668, 40 N.E.2d 359, the only authority relied upon in *Curtis*. Nor is the *Curtis* holding validated by *Pettiford v. United Department Stores* (1935) 100 Ind. App. 471, 196 N.E. 342. I do not, therefore, base my concurrence upon the *Curtis* case.

The impairment is "resultant" (as that term is used in *Pettiford*) only if it does not exist in any degree at the time of the accident, or if existent, cannot be determined to be permanent. If the accident is the direct cause of an impairment it is not "resultant," even though the impairment which exists at the time of the accident either increases in degree or lessens in degree, so long as the impairment which does exist is permanent in nature. In the latter instance, any modification in award must be sought within two years of the accident. Stated conversely, if there is some impairment at the time of the accident, but it has not been determined to be permanent, a claimant may seek modification pursuant to I.C. 22–3–3–27.

When Dr. Feferman testified that he thought Yoder's condition "could be improved" he was stating that the condition was not permanent *and* quiescent. A condition may improve or worsen only if it has previously existed. Dr. Feferman's testimony clearly indicates the existence of an impairment but it does not compel a conclusion that the impairment could be determined to be permanent in nature at that time. It is the permanency of the impairment which triggers the limitation of I.C. 22–3–3–3.

From the record before us, I am unable to conclude that, as a matter of law, the impairment which Yoder manifested when examined by Dr. Feferman was permanent. It is for that reason that I concur in the application of I.C. 22–3–3–27.